

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2004

# Lepore v. Lanvision Sys Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3619

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lepore v. Lanvision Sys Inc" (2004). *2004 Decisions.* Paper 213.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/213

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3619
_____

JANE LEPORE
_____Appellant

v.

LANVISION SYSTEMS, INC.

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(Civ. No. 00-cv-04144)
District Judge: Honorable Petrese B. Tucker
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 28, 2004
_____

Before: ROTH, BARRY, and GARTH, <u>Circuit</u> <u>Judges</u>

(Filed: October 19, 2004)
_____

OPINION
_____

1

Garth, <u>Circuit</u> <u>Judge</u>:

Appellant Jane Lepore appeals from the District Court's grant of summary judgment in favor of Appellee LanVision Systems, Inc. ("LanVision") on Lepore's claims of sex and/or pregnancy discrimination and retaliation. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. §1291. We will affirm.

## I.

Because we write solely for the benefit of the parties, we recount the facts and procedural history only as they are relevant to the following discussion.

LanVision is a software developer with its headquarters located in Cincinnati, Ohio. Jane Lepore began working for LanVision at its headquarters on July 8, 1996, as a Project Manager. In February 1997, LanVision reorganized and Lepore was transferred to Indirect Sales as an Application Specialist. Several months later, Lepore assisted her supervisor, Paul Burke, in the search for two additional application specialists to join the Indirect Sales team . That search resulted in the hiring of Nick Jovings and Mark Zajicek.

As a result of a second reorganization, in April 1998, the Indirect Sales team was dissolved and Lepore, Jovings and Zajicek were transferred to Direct Sales. Lepore retained her position as Application Specialist and began reporting to Larry Smeage, the National Director of Sales. One month later, Jovings left Direct Sales and was assigned to Professional Services.

2

Lepore was pregnant and nearing her due date when she was transferred. Smeage assigned Lepore to work under Terry Costello, a Direct Sales team leader, for the interim period before her maternity leave was to commence. Prior to Lepore's leave, Smeage and Lepore had a discussion about Lepore's upcoming childbirth and issues related to childcare. Smeage conveyed his wife's difficulty with leaving her child and returning to work, and in particular their difficulties in finding childcare. According to Smeage, "basically [he] let her [Lepore] know that as far as childcare, and so on, that she may want to look into that . . . proactively, since she – you know, part of her job is to be on the road traveling." Smeage Dep. at 18. After Lepore told Smeage that she had already arranged for childcare, Smeage responded "I don't know, you might change your mind after having your first baby, you might not want to come back to work." *Id*. at 204-205. Lepore testified that she did not believe Smeage's raising the childcare issue was discriminatory, but that she "was dumbfounded that he would discourage [her] . . . ." *Id*. at 205-206.

Lepore went on medical leave on May 11, 1998. She gave birth on May 21, 1998, at which time her maternity leave officially began. During her leave, Lepore moved to Philadelphia, Pennsylvania with her husband and child. Lepore's statutorily-mandated 12-week maternity leave expired on July 21, 1998. Lepore informed Terry Costello that she did not intend to return to work until August 12, 1998, taking a combination of paid and unpaid leave for the remaining period.

Adopting a program of company-wide downsizing, between February 1, 1998 and

January 31, 1999, LanVision reduced its workforce from 123 to 75 employees through terminations and resignations. In particular, management decided to keep only one Application Specialist in the Direct Sales group. Smeage chose to keep Terry Costello, the team leader. Lepore testified that Costello was the right person to retain because of her seniority and experience. *See* Lepore Dep. at 294. On August 6, 1998, Smeage informed Lepore that she had been terminated. LanVision laid off 12 percent of its workforce during that time. Zajicek transferred to Professional Services on the West Coast for one month until he too was laid off in September 1998.

## II.

The District Court granted summary judgment in favor of LanVision. First, it found that Lepore failed to make out a *prima facie* case of gender and pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S. § 951 *et seq.*, in connection with her termination by LanVision. The District Court determined that Lepore was terminated as part of a corporate reorganization that included a reduction in force, and that no similarly situated individuals outside the protected class were retained.

Second, the District Court rejected Lepore's FMLA claim for LanVision's failure to reinstate her upon her return from maternity leave, finding that Lepore failed to satisfy her evidentiary burden of demonstrating either discriminatory intent or retaliation.

4

We exercise plenary review over the District Court's grant of summary judgment and apply the same standard as the District Court, i.e., whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff. *Fed. R. Civ. P.* 56(c); *Debiec v. Cabot Corp.*, 352 F.3d 117, 128 n. 3 (3d Cir. 2003) (citation omitted). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Applying that standard here, we conclude that the District Court properly granted summary judgment in favor of LanVision.

## A.    Title VII and PHRA

In order to make out a *prima facie* case of discrimination in a reduction in force case arising under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position in question, (3) she was terminated, and (4) individuals not within the protected class were retained. *In re Carnegie Center Assocs.*, 129 F.3d 290, 294-95 (3d Cir. 1997) (citation omitted). Once the *prima facie* case is successfully made, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the defendant meets this burden, the plaintiff must then prove that the defendant's reason was a pretext for a discriminatory motive. *Burdine*, 450 U.S. at 254. Claims arising under the PHRA are governed by the same legal standard as

that applied to Title VII. *See Gomez v. Allegheny Health Servs.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995) (citations omitted).

The central issue here is whether Lepore satisfied the fourth prong of the *prima facie* case, that is, whether she demonstrated that individuals not within the protected class were retained. In a reduction in force case, the persons outside the protected class are those employees who are "similarly situated," that is, they work in the same area in approximately the same position. *See Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 249-50 (3d Cir. 2002).

Lepore points to Jovings and Zajicek as the retained individuals outside the protected class. She claims that these "[t]wo male peers with less seniority and experience . . . were retained" while she was terminated. Lepore Br. at 7. We agree with Lepore that the comparison to Jovings and Zajicek was proper. We conclude, however, that neither of those individuals was retained and therefore Lepore fails to make a successful *prima facie* case.

As to Jovings, it is undisputed that he transferred out of Direct Sales before Lepore left for maternity leave and before the August 1998 reduction in force. With respect to Zajicek, while it is true that he transferred to Professional Services for one month, it is undisputed that he was laid off in September 1998 as part of the same reduction in force that resulted in Lepore's termination. Because Lepore cannot point to any similarly situated employees outside of the protected class who were retained, the District Court

6

correctly concluded that Lepore failed to establish a *prima facie* discrimination case.

In the alternative, Lepore argues that she has produced direct evidence of discrimination and that therefore we should also analyze her claim under the mixed motives analysis set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276 (1989). A plaintiff attempting to prove discrimination by direct evidence faces a "high hurdle." *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998). Specifically, the evidence must demonstrate that the "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.* In putting forth her mixed motives claim, Lepore relies mainly on her childcare conversation with Smeage, a conversation she admitted was not discriminatory. Furthermore, Lepore offers no evidence that "addresses directly the reasons for implementing the [reduction in force]." *Anderson*, 297 F.3d at 249. Based on the foregoing, we find Lepore has not cleared the high evidentiary hurdle of *Price Waterhouse*. Her mixed motives claim was therefore properly rejected.

**B.     FMLA**

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that (1) she took an FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave. *Conoshenti v. Public Svce. Electric & Gas Co.*, 364 F.3d 135 (3d Cir. 2004). Once a plaintiff makes out a *prima facie* case, the usual *McDonnell Douglas*, see *supra*, burden shifting framework is

implicated. *See Weston v. Pennsylvania*, 251 F.3d 420, 432 (3d Cir. 2001).

The District Court found that Lepore successfully made out a *prima facie* case under the FMLA. However, in its analysis, it appears to have confused the requirements for a *prima facie* retaliation case with those for a *prima facie* discrimination case. Consequently, on appeal, the parties argue at length about whether the temporal proximity of Lepore's termination to the end of her maternity leave satisfies the causal connection prong of a *prima facie* retaliation case. We need not decide that here, however, because even assuming *arguendo* that Lepore made out a *prima facie* retaliation case, summary judgment was still proper.

In response to Lepore's claim of retaliation, LanVision proffers the reduction in force as its legitimate, non-discriminatory business reason for terminating her. Lepore offers no evidence that the reduction in force was pretextual. Indeed she offers no evidence that directly addresses the decision to implement the reduction in force in any way. Lepore's only evidence is her conversation with Smeage which, as we noted above, Lepore herself admitted was not discriminatory. Consequently, Lepore fails to carry her burden of proof on her FMLA retaliation claim and summary judgment was properly awarded.[1]

---

[1] Like the District Court below, we need not address LanVision's contention that the FMLA is inapplicable under 29 U.S.C. § 2611(2)(B)(ii) (FMLA does not cover an employee who is employed at a worksite at which the employer employs less than 50 employees if the total number of employees working within 75 miles of that worksite is less than 50) because Lepore's FMLA claim fails on the merits.

**III.**

LanVision moved to impose costs and sanctions on Lepore, or, in the alternative, to dismiss Lepore's appeal, claiming that Lepore engaged in an undue pattern of delay. We will deny both motions.

**IV.**

Accordingly, we will AFFIRM the judgment of the District Court.