**Robert SOMMER, on behalf of himself and all similarly-situated employees, Plaintiffs,**

v.

**The VANGUARD GROUP and John Does 1–10, Fictitious Individuals and Entities, Defendants.**

Civil Action No. 04–2682.

United States District Court, E.D. Pennsylvania.

Aug. 10, 2005.

Robert Sommer, pro se.

William B. Hildebrand, Law Offices of William B. Hildebrand, L.L.C., Cherry Hill, NJ, for Plaintiffs.

Joseph J. Costello, Pam R. Jenoff, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Defendants.

## *MEMORANDUM*

DuBOIS, District Judge.

## I. *INTRODUCTION*

Plaintiff, Robert Sommer, filed a Complaint in this Court on June 17, 2004 against defendant, the Vanguard Group, and "John Does 1–10, Fictitious Individuals and Entities." In his Amended Complaint, filed October 15, 2004, plaintiff alleges interference claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a), on behalf of himself and similarly-situated employees, and an individual retaliation claim. Presently before the Court is plaintiff's Motion for Partial Summary Judgment and Defendant's Cross–Motion for Summary Judgment. For the reasons set forth below, the Court concludes that plaintiff has failed to establish any cognizable claims under the FMLA. Thus, plaintiff's Partial Motion for Summary Judgment is denied and defendant's Cross–Motion for Summary Judgment is granted.

## II. *FACTS*

Plaintiff, while an employee of defendant, was absent from work for approximately eight weeks, from December 7, 2000 until February 4, 2001, on short-term disability under the FMLA. In the medical certification he submitted to defendant in support of the leave request, plaintiff stated that he was absent "due to major depression and generalized anxiety," and was admitted to Underwood Memorial Hospital PHP for treatment. (Joint Stip. Facts, Ex. C at D0029). As a result of his absence from work, defendant prorated plaintiff's bonus payments under its Partnership Plan and Bonus Program in accordance with company policy. Defendant reduced plaintiff's December 2001 payment under the Bonus Program for the 2001 calendar year by $110.00 and reduced his June 21, 2002 payment under the Partnership Plan by $1,788.23.

Defendant terminated plaintiff on May 14, 2004. On that same day, prior to learning of his termination, plaintiff requested and received approval for short-term disability leave-under which employees can continue medical benefits. By letter dated May 25, 2004, plaintiff's attorney informed defendant that plaintiff believed defendant's policy of prorating payments under the Partnership Plan violated his rights under the FMLA. In the Amended Complaint plaintiff avers that, on June 22, 2004, defendant informed him that it was terminating his medical benefits retroactive to the day of his termination.

Plaintiff alleges three Counts in his Amended Complaint. In Count I, he claims that defendant's policy of prorating payments under the Partnership Plan and Bonus Program interfered with his rights under the FMLA, 29 U.S.C. § 2615(a)(1). In Count II, he claims that the same policy interfered with the rights of all similarly-situated employees. In Count III, he alleges that defendant retaliated against him for objecting to this policy by canceling his medical benefits, in violation of 29 U.S.C. § 2615(a)(2).

At the Preliminary Pretrial Conference on November 9, 2004, plaintiff took the position that he could assert an interference claim on behalf of similarly-situated employees as a collective action, rather than a class action, and that class allegations were unnecessary. Thereafter, on November 18, 2004, plaintiff filed a Motion for Permission to File a Second Amended Complaint to include class allegations under Federal Rule of Civil Procedure 23. By Order dated December 6, 2004, the Court denied plaintiff's Motion without prejudice. In so ruling, the Court noted

that the parties agreed "to defer addressing the issue of whether plaintiff's [FMLA] claim could be litigated as a collective action as opposed to a class action," and directed plaintiff to file the instant Motion for Partial Summary Judgment and defendant to file its Cross–Motion to address defendant's liability under the FMLA. (¶ 2).

## III. *STANDARD OF REVIEW*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Courts hold that, "a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. A "material" factual dispute is one which might affect the outcome of the case under governing law. *Id.* Moreover, "a party resisting a [Rule 56(c)] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985) (internal citations omitted).

## IV. *DISCUSSION*

██ An employee may assert two types of claims under the FMLA: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under

the FMLA, *see* 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA, *see* 29 U.S.C. § 2615(a)(1) & (2).

## A. **Plaintiff's Interference Claims**

The FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any rights provided under the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA provides that, among those rights protected, "any eligible employee who takes leave under [the Act] shall be entitled, on return from such leave . . . to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The Department of Labor ("DOL") implementing regulations state that interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

Plaintiff, in his Partial Motion for Summary Judgment, argues that defendant's proration of bonus payments under the Partnership Plan and Bonus Program interfered with his and other employees rights under the FMLA. In its Cross–Motion, defendant responds that its policy of prorating these bonuses is consistent with the FMLA. In the alternative, it argues that plaintiff is time barred from bringing his individual claim on the basis of his reduced payments under the Bonus Program and that his collective or class claims should also be dismissed on that basis.

██ The parties cite to no authority in the Third Circuit addressing the issue of whether, and how, bonus payments may be prorated for time spent on FMLA leave.

However, the relevant Department of Labor regulations state as follows:

> Many employers pay bonuses in different forms to employees for job-related performance such as for perfect attendance, safety (absence of injuries or accidents on the job) and exceeding production goals. Bonuses for perfect attendance and safety do not require performance by the employee but rather contemplate the absence of occurrences. To the extent an employee who takes FMLA leave had met all the requirements for either or both of these bonuses before FMLA leave began, the employee is entitled to continue this entitlement upon return from FMLA leave, that is, the employee may not be disqualified for the bonus(es) for the taking of FMLA leave ... A monthly production bonus, on the other hand does require performance by the employee. If the employee is on FMLA leave during any part of the period for which the bonus is computed, the employee is entitled to the same consideration for the bonus as other employees on paid or unpaid leave.

29 CFR § 825.215(c)(2). *See also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

In *Dierlam v, Wesley Jessen Corp.,* 222 F.Supp.2d 1052, 1053–54 (N.D.Il.2002), the court considered a "stay bonus" under which employees were eligible to receive a lump sum payment if they remained "employed and actively working," during a period of corporate restructuring. *Id.* at 1054. In that case, the defendant prorated plaintiff's stay bonus for 12 weeks spent on FMLA leave. The Court ruled that this bonus was "analogous to a type of 'perfect attendance' bonus; it does not require [plaintiff] to meet production goals or quality standards but simply contemplates the nonoccurrence of an event-[plaintiff's] absence from work. As such, § 825.215(c)(2) makes the stay bonus one for which [plaintiff] may not be disqualified, either partially or wholly, for the taking of FMLA leave." *Id.* at 1057.

By contrast, opinion letters issued by the DOL state that, with regard to "[b]onuses based on some positive action required by the employee," "an employee may be awarded a reduced bonus or be deemed ineligible as a result of having been on FMLA leave and not having had the opportunity to continue to produce during the award period." Op. Ltr., FMLA–31, 1996 WL 104477 (Feb. 23, 1996). According to these opinion letters, employees may measure "production goals" on the basis of time worked and thus prorate to account for absences. *See e.g.,* Op. Ltr., FMLA–79, 1994 WL 1016739 (Mar. 21, 1994) ("If a bonus is calculated based on hours worked or yearly or monthly earnings, the FMLA leave taker would naturally receive a lesser amount."). In one case, the DOL considered an "incentive program" whereby employees are "eligible for the bonus if they work at least 80 percent of the time the shift is scheduled to work during the month." Op Ltr., FMLA–110, 2000 WL 22157364 (Sept. 11, 2000). The employer credited non-FMLA leave as hours worked for the purposes of eligibility, but prorated the bonus to exclude these hours. The DOL concluded that although the company could not disqualify the employee for falling below the 80% benchmark simply as a result of hours spent on FMLA leave, it could prorate the bonus for hours spent on leave. *Id.*

### 1. *Partnership Plan*

■ Defendant established its Partnership Plan "[t]o recognize crew members'

contributions to Vanguard's growth and success in a tangible way … The Plan is an opportunity for [employees] to share in Vanguard's growth and financial success." (Joint Stip. Ex. A., D003). "The Partnership Plan pool—the amount of money available for distribution—is based on such variables as Vanguard's operating performance, our competitors' operating performance, the performance of the securities markets, and the performance of Vanguard funds. As crew members, we play a significant role in determining the operating performance figures." (*Id.*). "Partnership Plan units are based on two criteria—length of your Vanguard service and your job level. Each unit is worth a dollar amount." (*Id.*).

Partnership Plan payments are prorated based on hours (or weeks) worked if the employee works part-time or takes short-term disability, long-term disability, workers compensation, personal leave, unpaid court leave, or FMLA leave. In its "Partnership and Leaves of Absence Q & A," defendant explains, "The Partnership Plan is designed to recognize a crew member's contribution to Vanguard's growth and success. During the time that the crew member is on a leave, that crew member is not actively contributing to Vanguard's overall performance." (*Id.* at D0008).

Unlike the lump sum "stay bonus" in *Dierlam,* the Partnership Plan payments are calculated based upon, *inter alia,* the performance of the company. *Dierlam,* 222 F.Supp.2d at 1057. The Partnership Plan does not "simply contemplate[ ] the nonoccurrence of an event," *id.,* but instead awards employees on the basis of time spent contributing to the company's performance. Thus the Court concludes that the Partnership Plan constitutes a "production bonus" under 29 C.F.R. § 825.215(c)(2) calculated on the basis of, *inter alia,* hours/weeks worked and can be prorated for absences under the FMLA.

■ Plaintiff also argues that defendant's policy is discriminatory and thus interferes with employees' rights under the FMLA because it prorates payments for FMLA leave but not vacation or sick time. However, in so arguing, plaintiff ignores the fact that defendant prorates Partnership Plan payments for a variety of non-FMLA leaves of absence including long-term disability, workers compensation, personal leave, and unpaid court leave. In light of this policy, the Court concludes that, in accordance with 29 C.F.R. § 825.215(c)(2), defendant offers employees taking FMLA leave "the same consideration for the bonus as other employees on paid or unpaid leave." Thus, prorating payments under the Plan does not interfere with employees' rights under the Act. Accordingly, the Court denies plaintiff's Partial Motion for Summary Judgment and grants defendant's Cross–Motion for Summary Judgment with respect to claims based upon the Partnership Plan as alleged in Counts I and II of the Amended Complaint.

### 2. *Bonus Program*

Defendant's Bonus Program "is based on crew member performance against bonus objectives, which are annual goals which the management and crew member jointly determine at the start of the year." (Joint Stip, Ex. B., D0001). "Bonus payments are prorated based on hire date, time in exempt position…and time spent on leave of absence." (*Id.*). Plaintiff argues that defendant's policy of prorating payments under the Bonus Program interferes with employees' rights under the FMLA. Defendant responds that this policy is consistent with the FMLA and, in the alternative, that plaintiff's claim on this ground is untimely under the applicable statute of limitations.

■ The statute of limitations for violation of the FMLA is two years. 29 U.S.C.

§ 2617(c)(1). However, "[i]n the case of such action brought for a *willful* violation of section 2615 of this title, such action may be brought within 3 years." 29 U.S.C. § 2617(c)(2) (emphasis added). "To successfully allege a willful violation of the FMLA, the plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Caucci v. Prison Health Services, Inc.,* 153 F.Supp.2d 605, 609 (E.D.Pa.2001) (citing *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). *See also Hillstrom v. Best Western TLC Hotel,* 354 F.3d 27, 33 (1st Cir.2003) (quoting *McLaughlin,* 486 U.S. at 133, 108 S.Ct. 1677) ("If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then it should not be considered willful."). *Hoffman v. Professional Med Team,* 394 F.3d 414, 419 (6th Cir.2005) (holding that wilfulness is "found most frequently in situations in which the employer deliberately chose to avoid researching the law's terms or affirmatively evaded them").

■ Although plaintiff's Amended Complaint states that "[defendant's] action were willful, so as to justify imposition of a three-year statute of limitations," (Am. Compl.¶ 19), he cites no evidence in support of this position. Defendant responds that it concluded that its proration policy did not violate the FMLA, and drafted its policies accordingly, on the basis of the caselaw, DOL regulations, and opinion let-

ters detailed above. Plaintiff fails to respond to this assertion in his submissions. In light of defendant's assertions, plaintiff's silence, and the limited legal authority on this issue, the Court cannot conclude that defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Caucci,* 153 F.Supp.2d at 609. The Court instead holds that, regardless of whether defendant's policy of prorating Bonus Program payments violated the FMLA, plaintiff has failed to establish a genuine issue of material fact as to whether defendant wilfully violated the Act. Accordingly, plaintiff's interference claim under 29 U.S.C. § 2615(a) is subject to a two-year statute of limitations.

Plaintiff received his prorated payment under the Bonus Program in December 2001 and filed his Complaint on June 17, 2004. Thus, the Court concludes that his interference claim in Count I for payment under the Bonus Plan is untimely. Because the Court concludes that this claim is untimely, it need not determine whether proration of payments under the Bonus Program violated plaintiff's and other employees' rights under the FMLA, as alleged in Counts I and II, and defendant's Cross–Motion for Summary Judgment is granted as to those claims.

In sum, the Court denies plaintiff's Partial Motion for Summary Judgment and grants defendant's Cross–Motion on Counts I and II of the Amended Complaint alleging interference claims under the FMLA.[1]

---

1. Defendant also argues that plaintiff "neglected to present any evidence to the Court that he suffered from a 'serious health condition' " qualifying him for protection under the FMLA. (Def. Mot. at 9 n. 3). In fact, the parties submitted evidence that plaintiff was hospitalized for "major depression and generalized anxiety." (Joint Stip., Ex. C at D0029). Courts have ruled such circumstances may constitute a serious health condition under

the FMLA. *Marrero v. Camden County Bd. of Social Services,* 164 F.Supp.2d 455, 465 (D.N.J.2001) ("[T]here is nothing in the statute or regulations that prevents *Plaintiff's* anxiety and depression from qualifying as a serious condition under the Act."). However, because the Court concludes that defendant is not liable for prorating payments under the Partnership Plan or Bonus Program, it need not rule on this issue.

## B. Retaliation Claim

■ Retaliation claims under the FMLA are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Lepore v. Lanvision Sys., Inc.*, 113 Fed.Appx. 449 (3d Cir.2004); *Baltuskonis v. U.S. Airways, Inc.*, 60 F.Supp.2d 445, 448 (E.D.Pa. 1999). Under this framework, a plaintiff must establish a prima facie case of retaliation by demonstrating that: (1) plaintiff availed himself of a protected right under the FMLA; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action. *See Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 146 (3d Cir.2004).

■ In Count III of the Amended Complaint, plaintiff alleges that defendant retaliated against him for objecting to its policy of prorating bonus payments by cancelling his medical benefits. In its Cross–Motion for Summary Judgment, defendant responds that plaintiff has failed to establish any causal connection because defendant decided to cancel plaintiff's medical benefits before plaintiff advised defendant of his objections under the FMLA. In support of this position, defendant relies on the Declaration of Julie S. Condon, Esq., its Principal and Associate Counsel. In her Declaration, Ms. Condon states that by May 19, 2004 she determined that, in accordance with company policy, plaintiff's medical benefits should be canceled as of the date of his termination on May 14, 2004. (Def.Mot., Ex. 3(A)) (Condon Decl. ¶ 5); (*Id.*, Ex. 5 at D0158) (benefits policy). Further, she "communicated this determination ... to the individuals responsible for handling plaintiff's termination and benefits by email on May 19, 2004." (*Id.* ¶ 5); (Def.Mot., Ex. B) (Condon email, May 19, 2004). Defendant asserts that it was unaware of plaintiff's objections to its proration of bonus payments under the FMLA until six days later, on May 25, 2004, when plaintiff's counsel notified defendant by letter of plaintiff's possible claims under the Act. Plaintiff fails to respond to defendant's evidence on this issue or cite any evidence in support of his retaliation claim.

The Court concludes that plaintiff has failed to provide any evidence of a causal connection between his objections under the FMLA and defendant's decision to cancel his medical benefits. For that reason, the Court grants defendant's Cross–Motion for Summary Judgment with respect to Count III.

## V. CONCLUSION

For the reasons stated above, the Court denies plaintiff's Partial Motion for Summary Judgment and grants defendant's Cross–Motion for Summary Judgment and enters judgment in favor of defendant against plaintiff.

An appropriate Order follows.

### ORDER

**AND NOW,** this 10th day of August, 2005, upon consideration of plaintiff's Motion for Partial Summary Judgment (Doc. No. 21, filed February 28, 2005), the Cross–Motion of Defendant, the Vanguard Group, Inc., for Summary Judgment (Doc. No. 23, filed March 14, 2005), plaintiff's Brief in Opposition to Defendant's Summary Judgment Motion (Doc. No. 25, filed March 28, 2005), and the related submissions of the parties, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that plaintiff's Motion for Partial Summary Judgment is **DENIED** and the Cross–Motion of Defendant, the Vanguard Group, Inc., for Summary Judgment is **GRANTED.**

**IT IS FURTHERED ORDERED** that judgment is **ENTERED** in **FAVOR** of defendant, the Vanguard Group, and against plaintiff, Robert Sommer, on behalf of himself and all similarly-situated employees.

**IT IS FURTHERED ORDERED** that the Clerk of Court shall **MARK** this matter **CLOSED FOR STATISTICAL PURPOSES.**