

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2006

# Sommer v. Vanguard Grp

Precedential or Non-Precedential: Precedential

Docket No. 05-4034

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Sommer v. Vanguard Grp" (2006). *2006 Decisions.* Paper 497.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/497

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-4034

_____

ROBERT SOMMER, ON BEHALF OF HIMSELF
AND ALL SIMILARLY-SITUATED EMPLOYEES,


v.

THE VANGUARD GROUP;
JOHN DOES 1-10, FICTITIOUS INDIVIDUALS AND
ENTITIES

Robert Sommer,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-02682)
District Judge: The Honorable Jan E. DuBois

_____

Argued July 10, 2006

Before: SMITH, ALDISERT and ROTH, <u>Circuit Judges</u>.

(Filed: August 24, 2006)

William B. Hildebrand, Esq. (ARGUED)
Law Offices of William B. Hildebrand LLC
1040 North Kings Highway, Suite 601
Cherry Hill, NJ 08034

     Counsel for Appellant

Joseph J. Costello, Esq. (ARGUED)
Pam R. Jenoff, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

     Counsel for Appellee

## OPINION OF THE COURT

ALDISERT, <u>Circuit Judge.</u>

This appeal by Robert Sommer, a former employee of The Vanguard Group, Inc., presents a question of first impression regarding the construction of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and the corresponding Department of Labor ("DOL") regulations. We

-2-

must decide whether Vanguard illegally interfered with Sommer's FMLA rights when, upon his return from approximately eight weeks of short-term disability FMLA leave, it did not award him a full annual bonus payment under its Partnership Plan, but instead awarded him a payment prorated on the basis of the time he was absent. Central to this question is a determination of what the bonus program rewards: employee production or the absence of an occurrence. If it rewards employee production, then proration for FMLA absences is generally allowed; if it rewards the absence of an occurrence (like a safety or perfect attendance bonus), then proration is not allowed.

In a summary judgment dated August 10, 2005, the District Court for the Eastern District of Pennsylvania determined that the Vanguard Partnership Plan is a production bonus and that the company had not unlawfully interfered with Sommer's FMLA rights by prorating his bonus. We agree and will affirm.[1]

I.

Congress enacted the FMLA in 1993 to accommodate "the important societal interest in assisting families, by establishing a minimum labor standard for leave." Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999) (quoting S. Rep.

---

[1] The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 as well as 29 U.S.C. § 2617. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

No. 103-3 at 4, 1993 U.S.S.C.A.N. at 6-7).  Congress' stated purposes for the act are "(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity; [and] (2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition; . . ."  29 U.S.C. § 2601(b)(1), (2).  To accomplish these goals, the FMLA grants an "eligible employee" the right to 12 work-weeks of leave over any 12-month period because of, among other things, "a serious health condition that makes the employee unable to perform the functions" of the employee's position.  § 2612(a)(1).  After a period of qualified leave, an employee is entitled to reinstatement to his former position or an equivalent one with "equivalent employment benefits, pay and other terms and conditions of employment."  § 2614(a)(1).  Moreover, the taking of FMLA leave, "shall not result in the loss of any employment benefit accrued prior to the date on which leave commenced."  § 2614(a)(2).  This right is limited, however, by the proviso that the restored employee shall not be entitled to "the accrual of any seniority or employment benefits during any period of leave[,] or . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."  § 2614(a)(3)(A), (B).

To protect these rights, the FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA.  § 2615(a)(1).  Such a claim is typically referred to as an

"interference" claim, and is acknowledged to "set floors for employer conduct." Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). To deter such interference, Congress has provided that an employer may be found liable for civil damages that include: compensatory damages for any wages, salary, employment benefits or other compensation lost by reason of the violation; and liquidated damages. § 2617(a)(1)(A).

To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison, 430 F.3d at 119 (citing 29 U.S.C. §§ 2612(a), 2614(a)). "Under this theory, the employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Id. at 119-120. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. at 120. Because the FMLA is not about discrimination, a McDonnell-Douglas burden-shifting analysis is not required. See Parker v. Hanhemann Univ. Hosp., 234 F. Supp. 2d 478, 485 (D.N.J. 2002) (citing Hodgens v. Gen'l Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998)).

II.

Addressing unlawful FMLA interference, the DOL has stated that it includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29

C.F.R. § 825.220(b).[2] As for company bonus programs—and, more specifically, the distinction between absence of occurrence bonuses (e.g., safety and perfect attendance bonuses) and production bonuses—the DOL has explained:

> Many employers pay bonuses in different forms to employees for job-related performance such as for perfect attendance, safety (absence of injuries or accidents on the job) and exceeding production goals. Bonuses for perfect attendance and safety do not require performance by the employee but rather contemplate the absence of occurrences. To the extent an employee who takes FMLA leave had met all the requirements for either or both of these bonuses before FMLA leave began,

---

[2] Congress has vested the Secretary of Labor with the authority to "prescribe such regulations as are necessary to carry out" the provisions of the FMLA. See 29 U.S.C. § 2654. Accordingly, the DOL's regulations must be given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843-844 (1984); Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145 (3d Cir. 1998) (stating that Chevron deference is due where the statute expressly delegates "to the Department of Labor the authority to promulgate regulations interpreting" the statute); Sekula v. F.D.I.C., 39 F.3d 448, 452 (3d Cir. 1994) ("So long as the regulation bears a fair relationship to the language of the statute, reflects the views of those who sought its enactment, and matches the purpose they articulated, it will merit deference.").

> the employee is entitled to continue this entitlement upon return from FMLA leave, that is, the employee may not be disqualified for the bonus(es) for the taking of FMLA leave. See § 825.220 (b) and (c). A monthly production bonus, on the other hand does require performance by the employee. If the employee is on FMLA leave during any part of the period for which the bonus is computed, the employee is entitled to the same consideration for the bonus as other employees on paid or unpaid leave (as appropriate). See paragraph (d)(2) of this section.

§ 825.215(c)(2). The referenced subsection (d)(2) provides that "[a]n employee may, but is not entitled to, accrue any additional benefits or seniority during unpaid FMLA leave." § 825.215(d)(2).

Although the regulations do not speak specifically to the proration of bonuses, the DOL has issued several opinion letters detailing how companies should compute the bonuses of those employees who take FMLA leave.[3]

---

[3] See DOL Op. Ltr., FMLA-110, 2000 WL 33157364 (Sept. 11, 2000) (the "2000 DOL Opinion Letter"); DOL Op. Ltr., FMLA-80, 1996 WL 1044777 (Apr. 24, 1996) (the "1996 DOL Opinion Letter"); DOL Op. Ltr., FMLA-31, 1994 WL 1016739 (Mar. 21, 1994) (the "1994 DOL Opinion Letter"). Although statements contained in agency opinion letters are not entitled to Chevron deference, they are "entitled to respect" to "the extent that those interpretations have the 'power to

If a bonus is calculated based on hours worked or yearly or monthly earnings, the FMLA leave taker would naturally receive a lesser amount. Conversely, any methodology for calculating bonuses that are not based on worktime or accrued earnings cannot be reduced at all for FMLA leave takers who qualified for the bonus before they started FMLA leave and return to work and continue an otherwise perfect record for the remainder of the bonus period.

1994 DOL Opinion Letter, n.1. The DOL revisited this question several years later, again stating:

Under the FMLA, while an employee is not automatically entitled to accrue seniority or benefits during unpaid FMLA leave, an employer cannot use unpaid FMLA leave as a negative factor in employment actions. For example, in the case of a monthly "perfect" attendance bonus that tracks absences rather than performance, an employee who had not missed any time before taking unpaid FMLA leave would continue to be eligible for the bonus upon returning from FMLA leave. Where the amount of the bonus is

---

persuade.'" See Christensen v. Harris County, 529 U.S. 576, 587 (2000) (citations omitted). Accordingly, although we do not defer to the DOL FMLA opinion letters here, we do find them persuasive in guiding our analysis of the Vanguard Partnership Plan.

calculated from hours worked, [however] the FMLA leave taker would naturally receive a lesser amount than an employee who had not been on leave.

2000 DOL Opinion Letter; see also id. ("[S]ince bonuses may be pro-rated based upon hours worked, it would not be a violation under FMLA to determine the bonus percentage based only upon the actual hours of work during the monthly rating period.").

The precept that we derive from the regulations and DOL opinion letters is that although an employer may not reduce an absence of occurrence bonus paid to an FMLA leave taker if the employee was otherwise qualified but-for the taking of the FMLA leave, that employer may prorate any production bonuses to be paid to an FMLA leave taker by the amount of any lost production (be it hours or another quantifiable measure of productivity) caused by the FMLA leave. This rule is an appropriate application of the admonition found at 29 U.S.C. § 2614(a)(3) that, while on FMLA leave, an employee is *not* entitled to the accrual of any right of employment, but *is* entitled to those rights of employment "to which the employee would have been entitled had the employee not taken the leave."

III.

A.

Having set forth the relevant statutory and regulatory framework, we now turn to the facts of this case. While

employed at Vanguard as a Financial Administrator,[4] Sommer was on short-term disability leave under the FMLA from December 7, 2000 to February 4, 2001, approximately eight weeks. He returned to work on February 7, 2001, having used sick days to cover his absences on February 5-6, 2001. In his Certification of Health Care Provider Form, submitted in support of his FMLA leave request, he stated that he was absent "due to major depression and generalized anxiety," which required hospitalization at Underwood-Memorial Hospital PHP.[5] App. at A-083. Because of this absence, Vanguard prorated the bonus payments received by Sommer under both its Partnership Plan and Bonus Program: reducing his December 2001 Bonus Program payout by $110.00 and his June 21, 2002 Partnership Plan payout by $1,788.23. Both bonus payments were for calendar year 2001.

---

[4] Sommer was terminated from Vanguard on May 14, 2004 for misrepresenting that he had taken certain examinations required for his position.

[5] In its brief, Vanguard also argues that Sommer "neglected to present any evidence to the Court that he suffered from a 'serious health condition,' a necessary element of his FMLA claim." Vanguard Br. at 8 n.3 (citing 29 U.S.C. § 2612(a)(1)). The District Court declined to address this point because it held that Sommer's interference claim failed as a matter of law. Sommer v. Vanguard Group, 380 F. Supp. 2d 680, 686 n.1 (E.D. Pa. 2005). Because we agree that Sommer's interference claim fails as a matter of law, we need not discuss the merits of this contention.

-10-

B.

The Vanguard Bonus Program is not at issue in this appeal, <u>see</u> <u>infra</u>, section IV, so we will focus exclusively upon the Partnership Plan. Vanguard created the Partnership Plan in 1984 to "recognize crew members' contributions to Vanguard's growth and success in a tangible way," and to allow employees "to share in Vanguard's growth and financial success." Vanguard Partnership Plan Policy (hereinafter "Policy"), app. at A-058. The amount that the company will distribute annually under the Plan depends upon Vanguard's operating performance, its competitors' operating performance, the performance of the securities markets, the investment performance of the Vanguard funds and company earnings. <u>Id.</u> at A-058; Articles of the Vanguard Group, Inc. Partnership Plan (hereinafter "Articles"), app. at A-071. Company earnings, for purposes of the Partnership Plan, are calculated by the company's compensation committee. Articles, app. at A-071.

Qualification for the bonus is based on three requirements: the recipient must be employed (1) on the last calendar day of the year, (2) on the date of the Plan's distribution, and (3) all days in between. Policy, app. at A-058. The amount a qualifying employee will receive under the Plan depends upon three criteria: (1) job level, (2) length of service to the company, and (3) hours worked. <u>Id.</u> at A-058-A-059. Hours worked, or "Hours of Service" as it is referred to in the Partnership Plan's Articles, is defined as:

> [T]he actual hours for which an employee is paid
> or entitled to be paid by the Company for the

performance of duties or for vacation, holidays, sick time, or an approved leave of absence (including bereavement leave, court duty leave, and military leave). Any employee who is on a disability leave of absence under the Company's short-term or long-term disability program shall not be credited with Hours of Service during such leave of absence.

Articles, app. at A-066-A-067.

If an employee does not meet the annual goal for hours worked, 1,950 hours, his or her Partnership Plan payment is prorated by the amount of hours that he or she is deficient. Partnership and Leaves of Absence Q & A (hereinafter "Q & A"), app. at A-063. Vanguard explains its proration policy as follows:

**How is my Partnership payment impacted by a leave of absence?**

The Partnership payment is based on hours worked during the plan year. Time spent on leave is not considered time worked for purposes of calculating your Partnership payment. The basic proration is based on the following formula: number of hours worked divided by full-time hours (1,950) = proration percentage. . . .

\* \* \*

> **How many days can I be on leave before my Partnership is prorated?**
>
> The Partnership payment is **always** prorated for the leave time no matter how short the amount of time the [employee] is on leave, from a few hours to a few months. However, vacation and sick time, typically used during the elimination period, are considered time worked for purposes of calculating the Partnership payment.

Id. at A-063-A-064 (emphasis in original). As indicated, vacation and sick leave are considered hours worked under the Partnership Plan; most other forms of leave are treated differently. Vanguard prorates the bonus amount of a qualifying employee if that employee retired from Vanguard or was on "Short-Term Disability (STD), Long-Term Disability (LTD), Workers' Compensation, *or Family and Medical Leave (FMLA)* in the Plan year, or [is] on one of these leaves at distribution time[.]" Policy, app. at A-059-A-061 (emphasis added). Those who take personal leave and unpaid court leave also have their bonuses prorated. Id. at A-061.

IV.

On June 17, 2004, Sommer filed a complaint in the United States District Court for the Eastern District of Pennsylvania that alleged that Vanguard interfered with his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1), by prorating his Partnership Plan and Bonus Program payments for the time he spent on FMLA leave. He sought compensatory

damages for his lost income and benefits, liquidated damages, costs and attorney's fees. On October 4, 2004, Sommer amended his complaint and added two claims: (1) that Vanguard's proration policy interfered with the FMLA rights held by all similarly-situated employees, and (2) that in violation of 29 U.S.C. § 2615(a)(2), Vanguard illegally retaliated against Sommer for his objection to Vanguard's proration policy by ceasing the medical benefits that he had been receiving after the date of his termination.

On November 18, 2004, Sommer filed a motion for leave to file a second amended complaint adding class allegations, which the Court denied without prejudice in an order filed December 6, 2004. It held that before it would address the propriety of bringing this suit as a class action, as distinguished from a collective action, it would first address the underlying FMLA legal issue. Sommer and Vanguard consequently filed cross-motions for summary judgment on the issue of FMLA liability on February 28, 2005 and March 14, 2005, respectively. On August 10, 2005, the District Court entered an order denying Sommer's motion, granting Vanguard's, and entering judgment in favor of Vanguard. Sommer v. Vanguard Group, 380 F. Supp. 2d 680 (E.D. Pa. 2005). The Court held that (1) Vanguard's proration of Sommer's Partnership Plan bonus did not interfere with his FMLA rights because the Partnership Plan is a production bonus, for which proration is allowed, (2) Sommer's FMLA claim regarding the legality of Vanguard's proration of his Bonus Program payment was barred by the FMLA's two-year statute of limitations, and (3) his retaliation claim failed because Sommer failed to show any causal connection between the

termination of his medical benefits and his FMLA challenges.

Sommer now appeals the District Court's ruling that Vanguard's proration of his Partnership Plan payments does not interfere with his FMLA rights. He also appeals the Court's denial of his motion for leave to file a second amended complaint. He does not appeal the Court's denial of his Bonus Program FMLA claim or his retaliation claim.

V.

Because this is an appeal from a grant of summary judgment, our review is plenary. Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co. of Maryland, 989 F.2d 635, 637 (3d Cir. 1993). "On review[,] the appellate court is required to apply the same test the district court should have utilized initially." Id. (citation and quotations omitted). "A court may grant summary judgment only when the submissions in the record 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Rule 56(c), Federal Rules of Civil Procedure). "In determining whether summary judgment is appropriate, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson, 477 U.S. at 251-252).

-15-

VI.

Although the FMLA has been in effect for over ten years, this is the first case in which an appellate court has been required to distinguish between the two classifications of company bonus programs for purposes of an FMLA interference action. Sommer contends that the District Court erred in rejecting his argument that Vanguard's policy of mandatorily prorating the Partnership Plan bonus payments of those employees who take FMLA leave unlawfully interferes with those employees' FMLA rights. Specifically, he contends that the District Court incorrectly classified the Partnership Plan as a bonus program that rewards employees for production (under which proration for time spent on FMLA leave is allowed) and not for the absence of an occurrence (under which proration is not allowed). He argues that Partnership Plan eligibility is only contingent upon the employee remaining employed during the period in which the bonus is calculated, which means that the bonus program rewards the absence of an occurrence (i.e., not leaving or getting fired). For support, he analogizes this bonus program to the "stay bonus" considered in Dierlam v. Wesley Jessen Corp., 222 F. Supp. 2d 1052 (N.D. Ill. 2002). There, the district court determined that a company's "stay bonus" was an absence of an occurrence bonus because it was rewarding continued employment during a period of company-wide transition and was not contingent on an employee meeting any production goals or quality standards. See id. at 1057.

Although it is often difficult to sift through the jargon-laden terms of a company's bonus program documents to ascertain the goal actually being rewarded, here we agree with

-16-

the District Court that the Partnership Plan is more akin to a bonus program that rewards employee production. Production bonuses are those types of bonus programs that "require some positive effort on the employee's part at the workplace," as distinguished from a bonus that merely rewards an employee for "compliance with rules." 1994 DOL Opinion Letter. Here, Vanguard's focus throughout its policy appears to be on incentivizing employees to contribute to Vanguard's performance and production by meeting a predetermined hours goal—1,950 hours a year. See, e.g., Q & A, app. at A-063 ("The Partnership Plan is designed to recognize a crew member's contributions to Vanguard's growth and success. During the time that the crew member is on a leave, that crew member is not actively contributing to Vanguard's overall performance."). Vanguard then communicates this production goal to the employees throughout the policy—especially by indicating that qualifying employees' bonus amounts are based on hours worked and will be prorated for every hour that they are under the annual goal. See id., app. at A-063-A-064. ("The Partnership payment is based on hours worked during the plan year. . . . The Partnership payment is *always* prorated for the leave time no matter how short the amount of time the crew member is on leave, from a few hours to a few months.") (emphasis in original). An employee who works 1,950 hours has met the target production goal, and receives a full bonus. An employee who has less than 1,950 hours worked naturally receives a lesser bonus. Sommer's argument that the Plan is an absence of an occurrence bonus because qualification hinges upon continued employment ignores the simple fact that, beyond the Plan's qualification requirements, there is an hours-based annual production requirement. Accordingly, we agree with the

-17-

District Court that the Partnership Plan is a production bonus program and that the proration of its payments for those who take FMLA leave is allowed.

VII.

In the alternative, Sommer argues that even if the Partnership Plan is a production bonus, Vanguard's proration policy still interferes with his FMLA rights because the company prorates the bonuses of those who take unpaid forms of FMLA leave but does not similarly prorate the bonuses of those who take paid forms of leave, such as vacation or sick leave.  He contends that this disparate treatment violates the mandate of § 825.215(c)(2) that FMLA leave-taking employees be afforded "the same consideration" as those who go "on paid or unpaid leave."  Sommer argues that this disparate treatment interferes with employees' FMLA rights because it discourages employees from using such leave.  See 29 C.F.R. § 825.220(b) (stating that "interference" constitutes "not only refusing to authorize FMLA leave, but discouraging an employee from taking such leave")

The District Court rejected this argument, concluding that although Vanguard prorates the Partnership Plan bonuses of those who take FMLA leave and does not do so for those who take vacation or sick leave, this disparate treatment does not violate the final clause of § 825.215(c)(2) because Vanguard also prorates "a variety of non-FMLA leaves of absence including long-term disability, workers compensation, personal leave, and unpaid court leave."  Sommer, 380 F. Supp. 2d at 685.  Because FMLA leave is but one of many forms of leave

-18-

which triggers proration, the Court reasoned, Vanguard complied with the mandate of § 825.215(c)(2) that those employees who take FMLA leave be afforded "the same consideration for the bonus as other employees on paid or unpaid leave (as appropriate)." Id.

We agree with the District Court that—as to calculating bonus amounts, and specifically proration—§ 825.215(c)(2) does not require the equal treatment of those who take unpaid forms of FMLA leave and those who take paid leave. First, reading the regulation as a whole, § 825.215(c)(2) is concerned solely with the question of qualification and consideration for bonuses, not their calculation or proration. Indeed, neither calculation nor proration is mentioned in subsection (c)(2).

Second, for us to conclude that subsection (c)(2) requires employers to calculate the production bonuses of those who take unpaid forms of FMLA leave the same as those who take paid leave would violate the very terms of the FMLA. See 29 U.S.C. § 2614(a)(3)(A), (B) (stating that an FMLA leave taker shall not be entitled to "the accrual of any seniority or employment benefits during any period of leave[,] or . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."). Sommer took *short-term disability* FMLA leave. Had he not designated that short-term disability leave as FMLA leave, he still would have had his bonus prorated. By comparison, if his short-term disability FMLA leave were required to be treated the same as vacation or sick leave, which are not prorated, Sommer would then be accruing rights or benefits that would not otherwise have been

-19-

available to him if he had designated the leave only as short-term disability and not as FMLA leave. Such a result is clearly incompatible with the terms of § 2614(a)(3)(A), (B).

Finally, we observe that, were we to agree with Sommer's argument, its practical application would create an anomaly. Sommer's interpretation would mean that FMLA leave—regardless of the underlying leave classification—would effectively be put on par with vacation and sick leave, which are almost always treated differently than other forms of leave (i.e., workers' compensation, short-term disability and long-term disability leave). Employers would then be faced with the choice of providing full production bonuses to those employees who potentially miss up to 12 weeks of work in a 12-month period, or prorating the production bonuses of all employees who take accumulated vacation or sick leave. We do not believe that Congress intended such a result, especially in light of its admonishment that no employment right or benefit shall accrue to an employee on FMLA leave, and that FMLA leave takers are entitled to no rights or benefits other than those to which the employee would have been entitled had the employee not taken the FMLA leave. See 29 U.S.C. § 2614(a)(3); see also Price v. City of Fort Wayne, 117 F.3d 1022, 1022 (7th Cir. 1997) ("The goal [of Congress in enacting the FMLA] was not to supplant employer-established sick leave and personal leave policies, but to provide leave for more uncommon and, presumably, time-consuming events such as having or adopting a child or suffering from what is termed a 'serious health condition.'").

Accordingly, we reject Sommer's argument that Vanguard's policy of prorating the Partnership Plan payments

-20-

of those who take FMLA leave, but not the payments of those who take paid leave, impermissibly interferes with his protected FMLA rights.[6]

\* \* \* \* \*

In conclusion, we hold that the hours-based Vanguard Partnership Plan is a bonus program designed to reward employee production, which may be prorated to account for the hours not worked by those employees who take FMLA leave. Accordingly, Vanguard's proration of Sommer's Partnership Plan bonus for the time he spent on short-term disability FMLA leave did not interfere with his FMLA rights.

We will affirm the judgment of the District Court.

---

[6] In light of the foregoing rejection of the legal bases for Sommer's FMLA interference claim, we need not reach the question of whether the District Court exceeded the permissible bounds of its discretion in denying Sommer's motion for leave to file a second amended complaint adding class allegations.