**Emilio CAUCCI,**

v.

**PRISON HEALTH SERVICES, INC.**

**No. CIV. A. 01–CV–430.**

United States District Court, E.D. Pennsylvania.

May 10, 2001.

Bruce Preissman, Southampton, PA, for Plaintiff.

James J. Sullivan, Andrew J. Rolfes, Christopher J. Rusek, Klett, Liebur, Rooney & Schorling, Philadelphia, PA, for Defendant.

### MEMORANDUM

PADOVA, District Judge.

Plaintiff Emilio Caucci filed the instant action against Prison Health Services, Inc. alleging violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and seeking payment of accrued overtime pay under state law. Before the Court is Defendant's Motion to Dismiss the Amended Complaint.[1] For the reasons that follow, the Court grants in part and denies in part Defendant's Motion.

### I. BACKGROUND

The Amended Complaint alleges the following facts. Defendant provides medical services in Philadelphia correctional facilities. In August 1993, Plaintiff began working for Defendant as Associate Medical Director and Chief Medical Officer at a Philadelphia Detention Center. At that time, Plaintiff was classified as a non-exempt employee paid hourly, but did not receive time and a half for overtime work. In December 1995, Plaintiff was transferred to the Philadelphia Industrial Corrections Corporation to be Chief Medical Officer. At that time, Plaintiff was still a non-exempt employee earning $65.00 per hour and working 56–64 hours per week. Plaintiff also began working additional overtime shifts at the Curran–Fromhold Correctional Facility and the Philadelphia Detention Center, but did not receive over-

---

1. Plaintiff filed an Amended Complaint on April 25, 2001. Pursuant to the agreement of the parties, the Court will apply Defendant's Motion to the Amended Complaint.

time pay. The additional overtime shifts ceased in 1996.

On January 1, 1997, Plaintiff became an exempt employee receiving a salary. In August 1997, Defendant asked Plaintiff to work additional overtime shifts for his regular hourly wage. On November 4, 1997, Plaintiff informed Defendant that he was being evaluated for a degenerative medical condition. On November 10, 1997, Plaintiff requested leave under the FMLA for these medical problems and submitted a certificate from his insurance carrier and a note from his doctor stating that he could not work from November 19, 1997 through December 12, 1997. On December 1, 1997, Defendant approved Plaintiff's FMLA leave, but on the same day terminated Plaintiff from his position of Chief Medical Officer and Associate Medical Director.

Although Defendant told Plaintiff that he was eligible for FMLA leave through February 11, 1998, Plaintiff extended his leave only to January 15, 1998 when he returned to work. On January 16, 1998, Defendant offered Plaintiff part-time work beginning on January 26, 1998, on an as-needed basis at various facilities at an hourly rate that was less than what he had been paid prior to taking his leave. Plaintiff returned to work on January 26, 1998. On January 28, 1998, Plaintiff requested reinstatement to his prior positions and an equivalent salary and benefits, but Defendant refused. On March 1998, Defendant stopped giving any work to Plaintiff.

## II. LEGAL STANDARD

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts al-

leged in the complaint and accept all of the allegations as true. *Id.* Generally, district courts ruling on motions to dismiss may not consider matters extraneous to the pleadings. *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). District courts, however, may consider documents that are "integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment. *Id.* Affirmative defenses may be raised on a 12(b)(6) motion "where the defect appears on the face of the pleading". *Continental Collieries v. Shober*, 130 F.2d 631, 635–36 (3d Cir.1942).

## III. DISCUSSION

The Amended Complaint contains three counts. Count One alleges that Defendant violated the FMLA by failing to restore Plaintiff to his pre-leave or an equivalent position, only offering him part-time employment after he returned from FMLA leave, and reducing Plaintiff's hours to zero. Count Two asserts Defendant's liability for unpaid overtime wages from August 1993 through January 1, 1997, and again from August 1997 until his termination pursuant to the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat § 333.102. Count Three alleges a breach of contract claim based on Defendant's employee handbook. Defendant moves to dismiss all claims in the Amended Complaint. The Court will address each count in turn.

### A. *Count One—FMLA*

The FMLA entitles eligible employees of employers meeting certain statutory criteria to twelve weeks of leave during any twelve-month period in the event of "a serious health condition that makes the employee unable to perform the functions

of the position of such employee."[2] 29 U.S.C.A. § 2612(a)(1)(d) (West 2001). An employee returning from leave properly taken under the FMLA is entitled either to be restored to his or her former position or placed in an equivalent position in terms of benefit, pay and other conditions of employment. 29 U.S.C.A. § 2614(a)(1) (West 2001). Defendant argues that Count One is barred by the statute of limitations.

The FMLA requires a plaintiff to file suit "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C.A. § 2617(c)(1) (West 2001). In cases where the violation is willful, the plaintiff must file suit "within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C.A. § 2617(c)(2) (West 2001). To successfully allege a willful violation of the FMLA, the plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–30, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). The Amended Complaint alleges that Defendant's conduct was "willful, intentional, and in flagrant disregard of the provisions of the FMLA." (Am. Compl. ¶ 37.) Under the liberal pleading standards of the Federal Rules of Civil Procedure, this is sufficient to plead willfulness and trigger the three-year statute of limitations. *See* Fed.R.Civ.P. 9(b).

Plaintiff's Complaint was filed on January 26, 2001. Under the statutory language, the statute of limitations begins to run as of the date of the last event constituting a FMLA violation. *See* 29 U.S.C.A. § 2617(c)(2) (West 2001). Plaintiff alleges that Defendant violated the FMLA by refusing to restore him to his pre-leave position or an equivalent position and instead offering him part-time employment after his return to work, and eventually reducing his hours to zero and effectively terminating his employment in March 1998. (Am. Compl. ¶¶ 32, 34.) Plaintiff argues that the reduction of his hours and termination in March 1998 is the date of the last event constituting the alleged FMLA violation, and thus the action is not time-barred. Defendant views the refusal to reinstate Plaintiff to full-time employment as the dispositive date for the purposes of the statute of limitations, and the reduction of Plaintiff's work hours are only continuing damages that independently constitute an FMLA violation. Under Defendant's theory, the action is time-barred since the date upon which it notified Plaintiff that he would not be reinstated to his original position, January 16, 1998, falls more than three years before the filing of the Complaint. (*See* Am. Compl. ¶ 29.)

Assuming the truth of the allegations and taking all reasonable inferences in Plaintiff's favor, the Court cannot conclude at this stage that Plaintiff can prove no set of facts that could establish a violation of the FMLA within the statute of limitations. Upon summary judgment, however, Plaintiff will have to establish a causal link between the reduction of his hours to the taking of his FMLA leave. *See* 29 U.S.C.A. § 2615(a)(2) (West 2001).

**2.** Defendant does not dispute that the Amended Complaint satisfactorily alleges Plaintiff's eligibility for FMLA leave.

### B. *Count Two—PMWA*

Defendant raises two issues with respect to Count Two: statute of limitations and Plaintiff's status as an exempt employee. Because the Court determines that Plaintiff's claims fall outside the statute of limitations, the Court will not address Defendant's alternative argument.

■ Defendant argues that the PMWA has a three-year statute of limitations and that Plaintiff's claim under the PMWA is untimely because the claims for unpaid wages occurred prior to January 26, 1998, three years before the Complaint was filed. *See* 43 Pa. Cons.Stat. Ann. § 260.9a (West 2001). Plaintiff disputes that the three-year statute of limitations stated in section 260.9a applies to the PMWA, and instead argues that a six-year period governs. *See* 42 Pa. Cons.Stat. Ann. § 5527 (West 2001). The Court rejects Plaintiff's argument. Courts in this district have unanimously applied section 260.9a's three-year limitations period to claims under the PMWA. *See Harris v. Mercy Health Corp.*, No. Civ.A.97–7802, 2000 WL 1130098 *5 (E.D.Pa. Aug.9, 2000); *Friedrich v. U.S. Computer Serv., Inc.*, 833 F.Supp. 470, 477 (E.D.Pa.1993).

■ Since the three-year limitations period applies, Plaintiff's claims are time-barred. The Amended Complaint alleges that Defendant failed to pay proper overtime wages for two periods: (1) from August 1993 until January 1, 1997; and (2) beginning August 1997 when he agreed to work additional shifts at the Curran–Fromhold correctional facility and the detention center. (Am. Compl. ¶ 43, 45, 46.) While the Amended Complaint does not give an ending date for the latter period, it

is clear from the face of the Amended Complaint that the last date for which unpaid overtime wages may be claimed is November 19, 1997, when Plaintiff took his FMLA leave. (*See* Am. Compl. ¶ 19.) After Plaintiff returned from his leave on January 16, 1998, he was given only part-time work, which by definition is fewer than forty hours a week, and the amount of time declined over time until he stopped receiving work in March 1998. (Am. Compl. ¶¶ 29, 31.) The Amended Complaint does not otherwise allege that he performed any overtime work after returning from his FMLA leave. Given that the last date for which unpaid overtime wages could be due under the allegations in the Complaint is November 19, 1997, and Plaintiff's Complaint was not filed until January 26, 2001, Plaintiff's claims under the PMWA fall outside the statute of limitations period. Accordingly, the Court dismisses Count Two.

### C. *Count Three—Breach of Contract*

Count Three alleges a claim for breach of contract seeking payment of time-and-a-half for overtime and wages during meal breaks during which Plaintiff remained on duty based on a provision in Defendant's employee handbook [3] ("Handbook"):

> All employees who do not qualify as overtime exempt will be paid for all hours worked in excess of the regular forty-hour week. Time worked in excess of forty hours per week will be paid time and one-half or as required by federal and/or state law.

(Compl. Ex. B; Am. Compl. ¶¶ 48–50.) Defendant advances multiple arguments in support of dismissal of this claim. First, Defendant argues that the Handbook does

---

**3.** While referencing Defendant's Employee Handbook as Exhibit B, the Amended Complaint fails to attach the exhibit. (Am. Compl. ¶¶ 48, 49.) The Court will consider Exhibit B attached to the original Complaint as having been attached to the Amended Complaint for the purposes of deciding this Motion.

not constitute an enforceable contract. Defendant next argues that any promise contained in the Handbook by its terms does not apply to Plaintiff, and that the claim is barred by the statute of limitations. Last, Defendant contends that the claim is preempted by the PMWA or Fair Labor Standards Act ("FLSA").

### 1. Enforceability

 An employment handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook. *Bauer v. Pottsville Area Emergency Med. Serv.*, 758 A.2d 1265, 1269 (Pa.Super.Ct.2000). The handbook must contain a clear indication that the employer intended to overcome the at-will presumption. *Id.* (citing *Luteran v. Loral Fairchild Corp.*, 455 Pa.Super. 364, 688 A.2d 211, 214–15 (1997)). The court may not presume that the employer intended to be bound legally by distributing the handbook nor that the employee believed that the handbook was a legally binding instrument. *Luteran*, 688 A.2d at 215. Generally, explicit disclaimers of contract formation in an employee handbook preclude a breach of contract claim. *Landmesser v. United Air Lines, Inc.*, 102 F.Supp.2d 273, 280 (E.D.Pa.2000) ("This explicit disclaimer of the formation of a contract nullifies plaintiff's claim for breach of contract.").

 Notwithstanding this, provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties. *Bauer*, 758 A.2d at 1269. A unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance. *Id.* In the employment context, the communi-cation to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. *Id.* The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required. *Id.* Thus, the provisions comprising the unilateral contract may be viewed as "a contract incidental or collateral to at-will employment." *Pilkington v. CGU Ins. Co.*, No. Civ.A.00–2495, 2000 WL 33159253, at *6 (E.D.Pa. Feb. 9, 2001). An employer who offers various rewards to employees who achieve a particular result or work a certain amount of overtime, for example, may be obligated to provide those awards to qualifying employees, although retaining the right to terminate them for any or no reason. *Id.* (citing *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 320 (1986)).

 Defendant submits a document that it claims is a disclaimer applicable to the Handbook that was purportedly signed by Plaintiff on November 11, 1997. At this stage of the proceedings, however, the Court cannot determine the applicability of the purported waiver or conclude that Plaintiff can prove no set of facts under which the Handbook could constitute an enforceable contract for all or part of his claimed overtime. The Court, therefore, rejects Defendant's argument at this time.

### 2. Applicability

 The Handbook provides overtime pay for "[a]ll employees who do not qualify as overtime exempt." (Compl. Ex. B.) Defendant argues that Plaintiff was an exempt employee after January 1, 1997, and therefore not qualified for overtime pay. If Defendant's argument were accepted, then the breach of contract claim would be limited to overtime wages accru-

ing until January 1, 1997. Actions for breach of employment contracts are subject to a four-year statute of limitations. *Packer Society Hill Travel Agency v. Presbyterian Univ. of Pa. Med. Ctr.* 430 Pa.Super. 625, 635 A.2d 649, 652 (1993); *see* 42 Pa. Cons.Stat. Ann. § 5525(8) (West 2001). Since the Complaint was not filed until January 26, 2001, Plaintiff's claims would be barred.

■ The Amended Complaint states that Plaintiff was classified as a non-exempt employee from August 1993 until January 1, 1997. (Am. Compl. ¶¶ 7, 11, 14.) On January 1, 1997, Plaintiff became an exempt employee receiving a salary. (*Id.* ¶ 14.) In August 1997, Defendant asked Plaintiff to perform overtime shifts in return for hourly wages. (*Id.* ¶ 15.) Plaintiff alleges that by asking him to perform overtime work, Defendant effectively considered him a non-exempt employee. (*Id.* ¶ 15.) Under the standard for deciding motions pursuant to Rule 12(b)(6), the Court must assume the truth of the allegations in the Amended Complaint. Given Plaintiff's allegations, the Court cannot conclude that Plaintiff can prove no set of facts that survive the statute of limitations and state a claim for which relief could be granted. Accordingly, the Court rejects Defendant's argument at this time.

### 3. Preemption

■ Defendant alternatively argues that Plaintiff's claim is preempted by the PMWA or FLSA. This argument falls on its misconstrual of the language of the Handbook. According to Defendant, the Handbook merely promises to comply with federal and state wage laws. The Handbook, however, facially provides for overtime pay independently of federal and state laws for non-exempt employees:

> Time worked in excess of forty hours per week will be paid time and one-half

or as required by federal and/or state law.

(Compl. Ex. B) (emphasis added). Should the Handbook provision constitute an enforceable contract that is applicable to Plaintiff, a claim for its breach could be premised on an independent promise to pay time and one-half. This case, therefore is distinguishable from cases where the plaintiff bases a state law claim on public policy embodied in other statutes. *See, e.g., McKiernan v. Smith–Edwards–Dunlap Co.*, No. Civ.A.95–1175, 1995 WL 311393, at *5 (E.D.Pa. May 17, 1995). The Court also notes that the necessary implication of Defendant's argument is that employers can never contract to provide more remuneration or benefits than are minimally required under federal or state laws. The Court cannot hold that federal and state laws mandate a ceiling for wages and benefits. For these reasons, the Court rejects Defendant's argument.

### IV. CONCLUSION

The Court grants in part and denies in part Defendant's Motion. Count Two of the Amended Complaint is dismissed. An appropriate Order follows.