Max **GROSSO**, Plaintiff,

v.

**FEDERAL EXPRESS
CORPORATION**,
Defendant.

Civil Action No. 05–6128.

United States District Court,
E.D. Pennsylvania.

Dec. 19, 2006.

452

Andrew M. Calvelli, Law Firm of Andrew M. Calvelli, Wayne, PA, for Plaintiff.

John W. Campbell, Federal Express Litigation Department, Memphis, TN, Dara Penn Newman, Susan M. O'Neill, Simon Moran, PC, Philadelphia, PA, for Defendant.

### *MEMORANDUM*

DuBOIS, District Judge.

## I. INTRODUCTION

Plaintiff Max Grosso filed this action against his employer, Federal Express

Corporation ("FedEx"), alleging retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a) (2); interference with his rights under the FMLA, 29 U.S.C. § 2615(a)(1); and retaliation under Section 510 of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1140. Presently before the Court is defendant's Motion for Summary Judgment. For the reasons set forth below, defendant's Motion for Summary Judgment is granted in part and denied in part.

## II. FACTS

The following facts are presented in the light most favorable to plaintiff, the non-moving party. Plaintiff began working for FedEx as a courier on September 12, 1997. Compl. ¶ 6; Answer ¶ 6. From 2001 through 2004, plaintiff took periodic FMLA leave to care for his father, who suffered from a heart condition and Alzheimer's disease. Compl. ¶ 10; Dep. Grosso at 69–70; Decl. Short ¶ 3; Decl. Lima ¶ 11. Plaintiff's father died on December 23, 2004. Compl. ¶ 29.

### A. Alleged Retaliation

Plaintiff does not allege that he was denied any FMLA leave to which he was entitled. Rather, plaintiff avers that he "receive[d] unequal treatment in the workplace" after he requested FMLA leave to care for his father. Compl. ¶ 11. Plaintiff's Complaint alleges four separate incidents of retaliation.

The first alleged incident of retaliation occurred in August of 2002. Dep. Grosso at 139. At that time, defendant reassigned plaintiff's truck to a more senior courier. Id. at 79–80; Compl. ¶ 15. Plaintiff's first truck had working air conditioning. Dep. Grosso at 81. In its place, plaintiff received a truck with broken air conditioning, which defendant repaired within a

"couple of weeks." Id. at 85. Plaintiff alleges that he was "singl[ed] out" as the only courier whose truck was reassigned. Id. at 86–87.

The second alleged incident of retaliation occurred in August of 2003 when defendant assigned plaintiff to a new day route, "route 202." Dep. Grosso at 143. Plaintiff's previous route had many stops and was appropriate for "experienced couriers." Decl. Lima ¶ 17; Dep. Grosso at 205. In contrast, route 202 was a "bulk route," which had few stops, each with a large number of packages. Dep. Grosso at 98; Decl. Simmons ¶ 6. Plaintiff describes route 202 as a "back buster" because the route required plaintiff to overload his truck with 40 or 50 pound boxes. Dep. Grosso at 92–93, 148. Moreover, when defendant reassigned plaintiff to route 202, plaintiff received a truck that plaintiff alleges was "the worst truck in the station" because of its poor transmission, lap-belt seat belts and lack of shelving. Dep. Grosso at 97. This truck was assigned to route 202 before plaintiff received the assignment. Dep. Grosso at 99; Decl. Lima ¶ 19; Decl. Simmons ¶ 9.

The third alleged incident of retaliation occurred in 2004, when defendant granted plaintiff an extended personal leave. On August 23, 2004 plaintiff's FMLA leave was exhausted. Decl. Lima Ex. F. Consequently, plaintiff requested a personal leave of absence to care for his father, who was then terminally ill. Dep. Grosso at 77; Decl. Lima Ex. F. Defendant granted plaintiff's request, and authorized plaintiff to take a ninety-day personal leave, scheduled to end on November 28, 2004. Dep. Grosso at 77, Ex. 22; Decl. Lima Ex. F. On November 22, 2004, plaintiff requested an extension. Dep. Grosso Ex. 23. Defendant denied plaintiff's request one day later, on November 23, 2004. Dep. Grosso at 168; Decl. Short ¶¶ 17–18. Plaintiff

argues that defendant denied his request for an extension in retaliation for his previous FMLA leave. Compl. ¶ 30.

On November 26, 2004, plaintiff submitted a written request to become a "casual worker." Dep. Grosso at 79, Decl. Lima ¶ 32, Ex. G. "A 'casual worker' is one who works when there is work available, and who works without accruing any seniority or benefits." Compl. ¶ 33. Defendant formally granted plaintiff's request on December 17, 2004, shortly before plaintiff's father died. Dep. Grosso Ex. 25; Decl. Lima ¶ 32.

The fourth alleged incident of retaliation occurred after plaintiff returned to work as a casual worker. Compl. ¶ 29; Dep. Grosso at 17. According to plaintiff, the first route plaintiff received as a casual worker was "the worst pickup route in the station." Dep. Grosso at 17, 171. Plaintiff believes that defendant assigned plaintiff to this route in order to harass plaintiff, either to make him quit or to create a justification for firing him. *Id.* at 261–62.

Plaintiff continues to work for defendant as a casual worker. *Id.* at 10–12.[1] The parties dispute when the last alleged incident of retaliation occurred. Plaintiff argues that defendant treated him unfavorably between March of 2005 and March of 2006. Pl.'s Ans. Def.'s Mot. Summ. J. at 10; Pl.Ex. B. Defendant alleges that plaintiff does not complain of any adverse treatment after February of 2005. Dep. Grosso at 179, 19; Def. Mot. Summ. J. at 15.

## B. Alleged Interference with Plaintiff's FMLA Leave

In addition to the alleged retaliation described above, plaintiff presents evidence that defendant discouraged plaintiff from taking FMLA leave. Compl. ¶¶ 12, 13, 22–24.

First, plaintiff alleges that Senior Manager Suzanne Martin Short, pressured plaintiff not to take FMLA leave. Defendant acknowledges that Short encouraged plaintiff to transfer care-taking responsibilities for his father to a nurse. Decl. Short ¶ 8; *see also* Decl. Lima ¶ 27. According to plaintiff, Short also told plaintiff that he was taking too much FMLA leave and that he needed to return to work. Dep. Grosso at 75–76. Plaintiff further alleges that on August 16, 2004, Short stated that plaintiff took FMLA leave whenever he had leave available and that this was unfair to plaintiff's co-workers. *Id.* at 160.

Second, plaintiff alleges that his supervisor, Michael Lima, discouraged him from taking FMLA leave by repeatedly advising plaintiff that he had FMLA leave available when plaintiff did not. Dep. Grosso at 103, 107, 188; Compl. ¶¶ 24–26. Plaintiff explains: "So I would start taking time off, and then I would have another conversation with Mike [Lima] and Mike would basically say, Well, Max, sorry, I made a mistake. You didn't have that much time. Now you're five days in the hole. You have to wait another month before you can take any FMLA." Dep. Grosso at 103, 107. Lima confirms that "[a]t certain times" he mistakenly overstated the number of FMLA leave days available to plaintiff. Decl. Lima ¶ 25. However, Lima states that

[i]f Mr. Grosso was absent on those days, and I later determined that I had been mistaken and that Mr. Grosso had not had any FMLA protected leave days

---

1. Some time after plaintiff began working as a casual worker, defendant offered to promote plaintiff to a full time courier position. Dep. Grosso at 307. Plaintiff did not accept the offer because defendant did not offer to restore plaintiff's seniority or lost benefits. *Id.* at 45–46, 308–309.

remaining, I did not count those days against Mr. Grosso's attendance. Instead, they were counted as FMLA protected leave days. As a result, Mr. Grosso was allowed to be absent more days than he otherwise would without being [sic] receiving discipline.

*Id.* ¶ 25. Plaintiff responds that Lima's errors "backed [him] into a corner" by preventing him from rationing his available leave. Dep. Grosso at 188.

Finally, plaintiff alleges that defendant discouraged plaintiff from taking FMLA leave by sending plaintiff a "decision day letter" on May 6, 2004. Dep. Grosso Ex. 20. This letter, entitled "Performance Reminder with Decision Day," stated that plaintiff had not only exhausted his FMLA leave, but had exceeded it by 8.5 days. *Id.* In addition, the letter stated that plaintiff's attendance was below the FedEx standard of 96.9%. *Id.*[2] The decision day letter directed plaintiff to draft an agreement, detailing "specific actions and timetables for correcting the performance problem." *Id.*

In response to the decision day letter, plaintiff and Lima signed an agreement on May 19, 2004. Dep. Grosso Ex. 19. The May 19, 2004 agreement stated that plaintiff "will make arrangements as soon as I can to accommodate the needs of my father. I am transferring more responsibilities to the nurse who cares for my father . . . I will work to get home care nursing to cover me so that I don't have to take time off whenever possible." Dep. Grosso Ex. 20. Plaintiff believes that the agreement "basically said put your dad in a [nursing] home and come back to work." Dep. Grosso at 196.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Courts hold that "a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. A "material" factual dispute is one which might affect the outcome of the case under governing law. *Id.* Moreover, "a party resisting a [Rule 56(c) ] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985) (internal citations omitted).

## IV. THE STATUTE OF LIMITATIONS

The statute of limitations for an FMLA claim is two years for an ordinary violation and three years for a willful violation. 29 U.S.C. § 2617(c)(1),(2). Section 510 of ERISA does not provide a specific statute of limitations. For § 510 claims "the ap-

---

**2.** In letters to plaintiff dated November 11, 2002, December 16, 2002, and February 5, 2003, defendant explained the impact of plaintiff's FMLA leave on his compliance with FedEx's attendance policy as follows: "FMLA does not count against your attendance but it does reduce the number of days worked in a calendar year. What that means is that your rating in attendance can actually go down if you're out on FMLA more time then [sic] you've worked." Dep. Grosso Exs. 9, 10, 13.

propriate period is determined by reference to the state statute of limitations governing cases most analogous to the cause of action asserted by the plaintiffs." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 843 (3d Cir.1987), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). Defendant argues that in this case plaintiff's employment contract shortened the statute of limitations to six months and that plaintiff's claims are therefore untimely. Plaintiff's employment contract states that plaintiff must bring a lawsuit against defendant "within the time prescribed by law or six (6) months from the date of the event forming the basis of my lawsuit, whichever comes first." Def. Mot. Summ. J. at 18.

The Court agrees with defendant that plaintiff does not allege retaliation or interference within the six-month, contractual limitations period. *See* Dep. Grosso 179, 16. However, the Court concludes that the contractual limitations clause is not controlling under either federal or Pennsylvania law.

Several courts have considered whether a six months, contractual limitations clause is enforceable under the Department of Labor's implementing regulations for the FMLA. The relevant regulations state that "[a]n employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act," 29 C.F.R. § 825.220(a)(1), and that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA," 29 C.F.R. § 825.220(d).

In *Lewis v. Harper Hospital*, 241 F.Supp.2d 769, 772–73 (E.D.Mich.2002), the court concluded that a six-month contractual limitations period impermissibly "interfered" with federal rights under the FMLA, in violation of 29 C.F.R. §§ 825.220(a)(1) and (d). *See also Woods v. DaimlerChrysler, Corp.*, 2003 WL 24196898, *4 (E.D.Mo. Dec.2, 2003) (six-month limitations clause unenforceable to bar FMLA claim); *Henegar v. Daimler–Chrysler Corp.*, 280 F.Supp.2d 680, 682 n. 1 (E.D.Mich.2003) (same); *Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.*, 352 F.Supp.2d 815, 823 (E.D.Mich. 2005) (six-month limitations clause unenforceable as against public policy with regard to Fair Labor Standards Act claim); *O'Phelan v. Federal Express Corp.*, 2005 WL 2387647, *4 (N.D.Ill. Sept.27, 2005) (six-month limitations clause unenforceable with regard to Title VII claim); *but see Badgett v. Federal Express Corp.*, 378 F.Supp.2d 613, 624–25 (M.D.N.C.2005) (six-month limitations clause upheld and FMLA claim denied as untimely). This Court agrees with the persuasive authority of *Lewis* and its progeny, and concludes that the six-month limitations clause in plaintiff's employment contract is unenforceable with regard to plaintiff's FMLA claims.

Additionally, the Court observes that under Pennsylvania law, parties may agree to a limitations period shorter than the applicable statute of limitations, provided that the period is "not manifestly unreasonable." 42 Pa.C.S. § 5501(a).[3] It is well-established that a one-year statute of limitations is "not manifestly unreasonable" under § 5501(a). *See, e.g., Smith v. American Equity Ins. Co.*, 235 F.Supp.2d 410, 412 (E.D.Pa.2002); *McElhiney v. Allstate Ins. Co.*, 33 F.Supp.2d 405, 406 (E.D.Pa.1999); *Caln Village Associates, L.P. v. Home Indem. Co.*, 75 F.Supp.2d

---

**3.** 42 Pa.C.S. § 5501(a) states: "An action, proceeding or appeal must be commenced within the time specified in or pursuant to this chapter unless, in the case of a civil action or proceeding, a different time is provided by this title or another statute or a shorter time which is not manifestly unreasonable is prescribed by written agreement."

404, 409 (E.D.Pa.1999). However, defendant does not cite to any case, under Pennsylvania law, that has upheld a contractual limitations clause of less than one year.

██ Defendant relies instead on *Lardas v. Underwriters Insurance Co.*, 426 Pa. 47, 51, 231 A.2d 740 (1967), in which the Pennsylvania Supreme Court ruled that plaintiff's insurance claim was barred by a one-year limitations clause, even though plaintiff did not discover his loss until eight months had elapsed. *Lardas* is inapposite to this case, where the right at issue is not contractual, but rather is a federal statutory right. *See Fox v. Rodel, Inc.*, 1999 WL 803885, *10 (D.Del. Sept.13, 1999) (distinguishing employment contracts from insurance contracts). Thus, the Court concludes that the six-month limitations clause in plaintiff's employment contract is unreasonable under § 5501(a), and does not bar plaintiff's claims.

██ Because the limitations clause does not apply, the applicable statute of limitations for plaintiff's FMLA claims is two years, under 29 U.S.C. § 2617(c)(1).[4] The applicable statute of limitations for plaintiff's claim under § 510 of ERISA is also two years.[5] Accordingly, plaintiff's

claims under both statutes are timely, and defendant's Motion for Summary Judgment on statute of limitations grounds is denied.

## V. PLAINTIFF'S FMLA CLAIMS

"The primary purposes of the FMLA are to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (quoting 29 U.S.C. §§ 2601(b)(1) and (2)). "Congress designed the FMLA 'to provide a security net for families by setting a minimum employment standard for unpaid leave that is required on the basis of medical necessity.'" *Williams v. Shenango, Inc.*, 986 F.Supp. 309 (W.D.Pa. 1997) (citations omitted). Toward this end, the FMLA entitles eligible employees to twelve weeks of unpaid leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

There are two types of claims an employee can bring against an employer under the FMLA: (1) interference claims, in

4. Under the FMLA, the statute of limitations is two years for an ordinary violation or three years for a willful violation. 29 U.S.C. § 2617(c)(1),(2). "To successfully allege a willful violation of the FMLA, the plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Caucci v. Prison Health Services, Inc.*, 153 F.Supp.2d 605, 609 (E.D.Pa.2001) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). In this case, plaintiff presents no evidence of a "willful violation"; nor does plaintiff argue that a three year statute of limitations applies. Thus, the Court concludes that plaintiff's FMLA claims are "ordinary" and that the default, two-year statute of limitations applies.

5. The statute of limitations for claims under § 510 of ERISA "is determined by reference to the state statute of limitations governing cases most analogous to the cause of action asserted by the plaintiffs." *Gavalik*, 812 F.2d at 843. In *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 252 (3d Cir.2002), the Third Circuit applied a two-year statute of limitations to a § 510 claim on the ground that the claim was "most analogous to a wrongful discharge" under Pennsylvania law. In *Anderson* and in this case, "the 'gravamen' of the alleged violation is that the plaintiff[ ] '[was] singled out for adverse treatment' so as to prevent [him] from receiving retirement-related benefits.'" *Colitas v. Aventis Cropscience USA Holding II, Inc.*, 2002 WL 1877928, *3 (E.D.Pa. Aug.12, 2002). Thus, the two-year statute of limitations applied in *Anderson* governs plaintiff's § 510 claim.

which an employee asserts that his employer denied or otherwise interfered with his substantive FMLA rights pursuant to 29 U.S.C. § 2615(a) (1),[6] and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA, pursuant to 29 U.S.C. § 2615(a) (2).[7]

## A. Plaintiff's Retaliation Claims

Retaliation claims under the FMLA are analyzed under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sommer v. Vanguard Group*, 380 F.Supp.2d 680, 687 (E.D.Pa.2005), *aff'd on other grounds* 461 F.3d 397 (3d Cir.2006); *Baltuskonis v. U.S. Airways, Inc.*, 60 F.Supp.2d 445, 448 (E.D.Pa.1999). Under the *McDonnell Douglas* framework, a plaintiff must first make out a prima facie case of retaliation. After a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer provides a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to establish that the employer's reason was pretext for retaliatory animus. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Baltuskonis*, 60 F.Supp.2d at 448.

### 1. Prima Facie Case

To establish a prima facie case of retaliation under the FMLA, plaintiff must show that: (1) plaintiff availed himself of a protected right under the FMLA; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 146 (3d Cir.2004); *Baltuskonis*, 60 F.Supp.2d at 448; *Voorhees v. Time Warner Cable Nat'l Div.*, 1999 WL 673062, *6 (E.D.Pa. Aug.30, 1999). Because it is undisputed that plaintiff availed himself of protected FMLA leave, only the second and third elements of the prima facie case are at issue in this case.

With regard to the second element, the Supreme Court recently clarified the definition of an "adverse employment action" in the context of Title VII of the Civil Rights Act of 1964. In *Burlington Northern & Santa Fe Railway Co. v. White*, —— U.S. ——, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the Supreme Court explained:

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from [engaging in protected activity].'"

126 S.Ct. at 2414–15 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C.Cir. 2006)).

---

**6.** "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1)

**7.** "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

29.U.S.C. § 2615(a) (2). *See also* 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave . . . [E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . .").

The Third Circuit has not yet had an opportunity to determine whether the standard enunciated in *Burlington Northern* applies to FMLA retaliation claims. However, several courts that have reached this issue have applied *Burlington Northern* to claims of retaliation under the FMLA. *See Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n. 2 (10th Cir.2006); *Foraker v. Apollo Group, Inc.*, 2006 WL 3390306, *2 (D.Ariz. Nov.22, 2006); *Campbell v. Washington County Public Library*, 2006 WL 2612985, *6 (S.D.Ohio Sept.8, 2006). Moreover, courts in this Circuit have previously concluded that Title VII jurisprudence "provides helpful guidance" in FMLA retaliation cases. *See, e.g., Collier v. Target Stores Corp.*, 2005 WL 850855, *5–6 (D.Del. Apr.13, 2005). Thus, this Court concludes that *Burlington Northern* provides guidance in determining whether plaintiff was subject to an "adverse employment action."

In Count I of the Complaint, plaintiff alleges four separate incidents of retaliation under the FMLA. The Court will consider each alleged incident in turn.

### a. Plaintiff's Truck Was Reassigned in August of 2002

 First, plaintiff alleges that defendant retaliated against him by reassigning his truck in August of 2002. Plaintiff alleges that defendant "singl[ed] out" plaintiff as the only courier whose truck was reassigned. Dep. Grosso at 86–87. Further, plaintiff presents evidence that his second truck was inferior to his first because the air conditioning in the second truck was broken for several weeks. *Id.* Defendant responds that this incident was not an adverse employment action because the two trucks were "virtually identical" and the air conditioning in plaintiff's second truck was repaired. Reply to Pl.'s Resp. at 4 n. 6.

The Court agrees with defendant, and concludes that plaintiff did not suffer an adverse employment action when his truck was reassigned in August of 2002. The difference between plaintiff's first and second trucks was minimal. Indeed, plaintiff testified that "the mechanic who works at the station fixed [the second truck] up for me and got the air conditioning working, and I had a decent truck with air conditioning again." Dep. Grosso 82. Although plaintiff presents evidence that he was "singl[ed] out" as the only courier whose truck was reassigned, this alone would not have "dissuaded a reasonable worker" from taking FMLA leave. *Burlington Northern*, 126 S.Ct. at 2414–15.[8] Thus, plaintiff has not established a prima facie case of retaliation on the ground that his truck was reassigned.

---

**8.** Nor does plaintiff establish an "adverse employment action" under the narrower standard articulated by the Third Circuit prior to *Burlington Northern*. In one pre-*Burlington Northern* case, the court explained:

> [T]he Third Circuit has not had the opportunity to explain what constitutes an adverse employment action under the FMLA. However, several Third Circuit opinions have examined the meaning of "adverse employment actions" under Title VII, the ADA, and the ADEA. In order for retaliatory conduct to rise to the level of an adverse employment action under Title VII, it 'must be

> serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment . . .' *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300–01 (3d Cir.1997). An adverse employment action necessarily encompasses all tangible employment actions such as 'hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits.' *Sherrod v. Phila. Gas Works*, No. 02–2153, 2003 WL 230709, *4 (3d Cir.2003)

*Collier*, 2005 WL 850855 at *6. The reassignment of plaintiff's truck was neither a "seri-

### b. Plaintiff Was Reassigned to Route 202 in August of 2003

Second, plaintiff alleges that defendant retaliated against him by reassigning plaintiff to route 202 in August of 2003. Plaintiff's previous route was "the type of residential/ commercial route that is normally given to experienced couriers." Decl. Simmons ¶ 3; Decl. Lima ¶ 17. In contrast, route 202 "did not require significant knowledge and experience." Decl. Lima ¶ 18; Decl. Simmons ¶ 7. Plaintiff alleges that route 202 was a "back buster," which required plaintiff to overload his truck with 40 or 50 pound boxes so that on occasion "the front wheels bent out." Dep. Grosso at 92–93, 148–49. Moreover, plaintiff alleges that when he was reassigned to route 202, he received "the worst truck in the station." Id. at 97.

Defendant argues that this was not an adverse employment action because plaintiff's reassignment to route 202 allowed him to leave work earlier in the day and to check on his father during lunch. Decl. Simmons ¶ 6. Plaintiff does not dispute this point. However, the record also demonstrates that plaintiff was reassigned from a route suitable for "experienced couriers" to a route that did not require experience and was a "back buster." Moreover, plaintiff presented evidence that the reassignment required him to drive a truck, which plaintiff describes as the "the worst truck in the station" because of its poor transmission, lap-belt seat belts and lack of shelving. Dep. Grosso at 97. For these reasons, a reasonable jury could find that plaintiff suffered an adverse employment action when he was reassigned to route 202. See Burlington Northern, 126 S.Ct. at 2417 (reassignment of job duties was "materially adverse" for the purposes of Title VII retaliation claim where plaintiff was reassigned from a job that re-

quired "more qualifications" to a job that was "more arduous and dirtier."); see also Voorhees, 1999 WL 673062 at *6 (plaintiff suffered adverse employment action when her job responsibilities were reduced and her office location changed, even though plaintiff received the same salary and benefits). Thus, the Court concludes that plaintiff suffered an adverse employment action when he was reassigned to route 202.

The Court must next consider whether there is a causal connection between plaintiff's reassignment and his FMLA leave. To establish a causal connection, plaintiff presents evidence that either FedEx manager Carmella Simmons or Michael Lima told plaintiff that his route was being reassigned because of his FMLA leave. Specifically, plaintiff alleges that Simmons or Lima told plaintiff that "[b]ecause of my family leave . . . I was taking too much time off and for station needs they were going to change my route. . . ." Dep. Grosso at 89–91. Plaintiff further alleges that Simmons told plaintiff that "yes, the day—my day route will change and my truck will change until my family leave is over. My night route will stay the same. She also said when my leave is done I will get my regular route back." Id. at 143. Defendant confirms that plaintiff's absenteeism contributed to the decision to reassign plaintiff to route 202. Both Simmons and Lima state that defendant was reassigned plaintiff to route 202 in part because route 202 was relatively easy to fill with a replacement courier when plaintiff was absent. Decl. Lima ¶ 18; Decl. Simmons ¶ 7.

Based on the foregoing evidence, a reasonable jury could find a causal connection between plaintiff's reassignment to route 202 and his FMLA leave. Thus, the Court

ous" nor a "tangible" employment action un-

der this pre-Burlington Northern standard.

concludes that plaintiff has established a prima facie case of retaliation under the FMLA with regard to his reassignment to route 202.

### c. Defendant Did Not Extend Plaintiff's Personal Leave in November of 2004

 Plaintiff further alleges that defendant retaliated against him by refusing to extend his ninety-day personal leave in November of 2004. Defendant argues that this was not an adverse employment action because plaintiff's extended leave was "extremely unusual and had not been granted to any other courier at the station." Decl. Short ¶ 17.

The Court agrees with defendant, and concludes that plaintiff was not subject to an adverse employment action when defendant did not extend his ninety-day personal leave. Plaintiff has not established that "a reasonable employee would have found [this event] materially adverse." *Burlington Northern*, 126 S.Ct. at 2414. Moreover, even if plaintiff had established adverse treatment, plaintiff has presented no evidence of a causal connection between defendant's refusal to extend his personal leave and plaintiff's FMLA leave more than three months earlier.[9] *See Coppa v. American Society for Testing Materials*, 2005 WL 1124180, *3 (E.D.Pa. May 15, 2005) ("[A] three month time period, without more, is too long a period to establish a causal link" between FMLA leave and an adverse employment action.). Thus, the Court concludes that plaintiff has not established a prima facie case of retaliation on the ground that defendant refused to extend his personal leave beyond ninety days.

### d. Plaintiff Was Assigned a Difficult Route as a Casual Worker

 Finally, plaintiff alleges that defendant retaliated against him when he returned to FedEx as a casual worker. Specifically, plaintiff alleges that the first route he was given as a casual worker was "the worst pickup route in the station." Dep. Grosso at 17, 171. Plaintiff believes that defendant assigned plaintiff to this route in order to harass plaintiff, either to make him quit or to create a justification for firing him. *Id.* at 261–62. Assuming *arguendo* that this was an adverse employment action, plaintiff has presented no evidence of any causal connection between plaintiff's first route as a casual worker and his FMLA leave more than three months earlier. *See Coppa*, 2005 WL 1124180 at *3. Thus, the Court concludes that plaintiff has not established a prima facie case of retaliation on this ground.

### 2. Defendant's Legitimate, Nondiscriminatory Reasons

Because plaintiff has established a prima facie case that defendant retaliated against him by reassigning him to route 202, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's adverse treatment. Defendant must produce an explanation, but "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089.

 To meet this burden, defendant proffers a legitimate business reason for plaintiff's reassignment to route 202. Specifically, defendant avers that plaintiff's route was reassigned because plaintiff was regularly absent with little or no notice.

---

**9.** The record demonstrates that plaintiff's FMLA leave was exhausted on August 23, 2004. Decl. Lima Ex. F. Plaintiff requested an extension of his personal leave on November 22, 2004. Dep. Grosso Ex. 23.

Decl. Lima ¶ 17; Decl. Simmons ¶ 5. Lima alleges:

In 2003, Mr. Grosso's behavior began to cause significant operational difficulties for FedEx. Specifically, [plaintiff] would not show up for work without calling to notify management of his absence (which is considered a 'no call no show' and merits specific discipline under FedEx policy) or would call in only minutes before his scheduled start time to let management know he could not work that day. This would leave management struggling to cover his route.

Decl. Lima ¶ 17. Defendant explains that plaintiff was reassigned to route 202 because this route was an easy route to fill on short notice since it had very few stops. On the basis of this evidence, the Court concludes that defendant has articulated a legitimate, nondiscriminatory reason for reassigning plaintiff to route 202.

### 3. Pretext Analysis

After defendant articulates a legitimate, nondiscriminatory reason for an adverse employment action, the burden of persuasion shifts back to the plaintiff to present evidence to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). Plaintiff must present evidence which demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's reasons that one could reasonably conclude that the reasons are untrue. *Fuentes,* 32 F.3d at 765.

■ To establish pretext, plaintiff alleges that his route was changed "[b]ecause of my family leave [sic] they were telling me I was taking too much time off and for station needs they were going

to change my route ...." Dep. Grosso at 89–90. However, plaintiff offers no evidence to undermine defendant's non-discriminatory explanation for plaintiff's reassignment. Plaintiff does not challenge defendant's allegation that plaintiff was frequently absent without notice. Nor does plaintiff offer any evidence to suggest that route 202 was not an easy route to fill with substitute couriers.

For the foregoing reasons, the Court concludes that plaintiff has not raised a genuine issue as to whether defendant's asserted reason for reassigning plaintiff to route 202 is mere pretext. Under the evidence presented by both parties, a reasonable jury could not rationally conclude that defendant's articulated reasons for its actions were not credible. "The FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Cohen v. Pitcairn Trust Co.,* 2001 WL 873050, *9 (E.D.Pa. June 20, 2001) (quoting *Dillon v. Carlton,* 977 F.Supp. 1155, 1160 (M.D.Fla.1997), *aff'd* 161 F.3d 21 (11th Cir.1998)). Thus, the Court grants defendant's Motion for Summary Judgment with respect to plaintiff's FMLA retaliation claim.

### B. Plaintiff's Interference Claim

■ 29 U.S.C. § 2615(a)(1) states: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under [the FMLA]." To state a claim of interference under § 2615(a)(1), an "employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Callison,* 430 F.3d at 119. Moreover, the Department of Labor implementing regulations state that interference includes "not only refusing to authorize FMLA leave, but

discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).[10] Count I of plaintiff's Complaint alleges that defendant interfered with his rights under the FMLA by discouraging plaintiff from taking FMLA leave.

Several district courts in this Circuit have considered whether an employee may bring a claim of FMLA interference "for actions that could 'chill' desire to take FMLA leave, even when the employee takes the leave." *Sherrod v. Philadelphia Gas Works,* 57 Fed.Appx. 68, 73 n. 6 (3d Cir.2003) (gathering cases). In *Shtab v. Greate Bay Hotel & Casino, Inc.,* 173 F.Supp.2d 255 (D.N.J.2001), plaintiff requested FMLA leave, beginning on the Saturday of Memorial Day weekend. Plaintiff's employer asked plaintiff to delay his FMLA leave until after the holiday weekend. Plaintiff "explained that he could not oblige" his employer, and applied for FMLA leave for his preferred dates. *Id.* at 259.[11] In *Shtab,* the court considered whether defendant interfered with plaintiff's FMLA rights by trying to persuade him to delay his FMLA leave, even though plaintiff did not accept defendant's suggestion. *Id.* at 267. The court concluded that "reasonable persons could conclude that [defendant's] request [that plaintiff delay his FMLA leave] 'chilled' Shtab's assertion of his rights under the FMLA." *Shtab,* 173 F.Supp.2d at 268.

Similarly, in *Williams v. Shenango, Inc.,* 986 F.Supp. 309, 313 (W.D.Pa.1997), defendant denied plaintiff's request for one week of FMLA leave, but presented plaintiff with the option of taking FMLA leave on a different week. Plaintiff refused this option, and took unauthorized leave, which was later reclassified as protected leave under the FMLA. The court concluded that defendant interfered with plaintiff's FMLA rights by suggesting that plaintiff take leave on a different week, explaining that "[t]he fact that [defendant] may, ultimately, have retroactively designated this leave as covered by the FMLA does not negate the possibility that its initial response to Williams' request may have 'chilled' or otherwise discouraged Williams' assertion of FMLA rights." *Id.* at 320–21. *See also Sabbrese v. Lowe's Home Centers, Inc.,* 320 F.Supp.2d 311 (W.D.Pa.2004) (genuine issue of material fact that defendant interfered with plaintiff's FMLA rights where defendant disciplined plaintiff, a diabetic, after plaintiff took FMLA leave to control his blood sugar level); *Butler v. IntraCare Hospital North, et al.,* 2006 WL 2868942, *4 (S.D.Tex. Oct. 4, 2006) (genuine issue of material fact whether defendant discouraged plaintiff from taking FMLA leave by suggesting that plaintiff work from home rather than take FMLA leave).

Conversely, in *Burch v. WDAS AM/FM,* 2002 WL 1471703, *9 (E.D.Pa. June 28, 2002), the court distinguished *Shtab* and *Williams* and concluded that defendant did not "discourage" plaintiff's FMLA leave. In *Burch,* defendant did not promptly respond to plaintiff's leave request, and reminded plaintiff of overdue

---

**10.** The Third Circuit has ruled that 29 C.F.R. § 825.220(b) is entitled to deference under the *Chevron* doctrine. *See Sommer v. The Vanguard Group,* 461 F.3d 397, 399 n. 2 (3d Cir.2006) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("'[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'")).

**11.** Defendant later denied plaintiff's FMLA request. *Shtab,* 173 F.Supp.2d at 259. However, this fact was not a necessary part of the *Shtab* court's decision to deny summary judgment under 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(b). *Id.* at 268.

reports during his wife's illness. The court granted defendants motion for summary judgment on the ground that no reasonable jury could conclude from these facts that plaintiff was discouraged from taking FMLA leave. *Burch*, 2002 WL 1471703 at *9. Similarly, in *Kumar v. UPMC Physician Services*, 2006 WL 1805691, *7–8 (W.D.Pa. June 28, 2006), the court granted summary judgment for defendant on an FMLA interference claim where the defendant asked plaintiff to try to finish the work on her desk before taking leave. The court concluded that the facts of the case were similar to *Burch* and that plaintiff was not discouraged from exercising her rights under the FMLA. *Id.* at *7.[12]

 In this case, plaintiff does not allege that he was denied any FMLA leave to which he was entitled. Rather plaintiff alleges that defendant interfered with his rights under the FMLA by discouraging him from taking FMLA leave to care for his father. Specifically, plaintiff claims that Short told him that he was taking too much FMLA leave and that he needed to come back to work; that it was not fair to plaintiff's co-workers that plaintiff took FMLA leave whenever he had leave available; and that plaintiff should put his father in a nursing home or obtain nursing care at home. Dep. Grosso at 72, 76, 160, 214; Decl. Short ¶ 8.

 In addition, plaintiff presented evidence that defendant required him to sign an agreement in response to a "decision day letter." This agreement stated that plaintiff "will make arrangements as soon as I can to accommodate the needs of my father. I am transferring more responsibilities to the nurse who cares for my father ... I will work to get home care nursing to cover me so that I don't have to take time off whenever possible." Dep. Grosso Ex. 20. Plaintiff believes that the agreement "basically said put your dad in a [nursing] home and come back to work." Dep. Grosso at 196.[13]

With regard to Short's statements, defendant responds that Short "did not discourage [plaintiff] from taking protected FMLA leave at any time" and that Short "suggested finding nursing care for [plaintiff's] father" only when plaintiff's FMLA leave was exhausted and plaintiff risked disciplinary action under FedEx's attendance policy. Decl. Short ¶¶ 8–9. With regard to the decision day letter, defendant argues that plaintiff received this letter because his attendance was below FedEx standards. Decl. Lima ¶ 20.

The record in this case presents facts similar to those in *Shtab* and *Williams*. Specifically, the record presents a genuine issue whether defendant discouraged plaintiff from taking FMLA leave by encouraging plaintiff to pursue other options, such as placing plaintiff's father in a nurs-

---

12. In *Alifano v. Merck & Co., Inc.*, 175 F.Supp.2d 792, 794 (E.D.Pa.2001), the court granted defendant's motion to dismiss an FMLA interference claim on the ground that plaintiff's Complaint did not allege either "that the Defendants denied her entitlement to leave [or] ... that Defendants failed to restore her to her previous position." However, the court in *Alifano* did not comment on the implementing regulation, 29 C.F.R. § 825.220(b), which states that interference also includes "discouraging an employee" from taking FMLA leave. *See Sabbrese*, 320 F.Supp.2d at 330.

13. Plaintiff further alleges that Lima discouraged plaintiff from taking FMLA leave by repeatedly advising plaintiff that plaintiff had FMLA leave available when plaintiff did not. Plaintiff explains that Lima's errors "backed [him] into a corner" by preventing him from rationing his FMLA leave. Dep. Grosso at 188. The Court concludes that, although unfortunate, Lima's errors did not discourage plaintiff from taking FMLA leave.

ing home or obtaining in-home nursing care. The alleged discouragement in this case is more severe than that in *Burch* and *Kumar* where defendants did not promptly respond to a leave request, reminded plaintiff of overdue reports, and asked plaintiff to finish the work on her desk before taking leave. Based on the alleged statements by Short, and the decision day agreement, a reasonable jury could conclude that defendant discouraged plaintiff from exercising his rights under the FMLA. Thus, summary judgment on that part of Count I that alleges interference with plaintiff's FMLA rights is denied under 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(b).

## VI. PLAINTIFF'S ERISA RETALIATION CLAIM

In Count II of the Complaint, plaintiff alleges a violation of § 510 of ERISA. Section 510 provides, in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.

 An employee alleging retaliation under § 510 of ERISA bears the burden of establishing a prima facie case of discrimination. *Kowalski v. L & F Products*, 82 F.3d 1283, 1287 (3d Cir.1996); *Gavalik*, 812 F.2d at 852. There are three prongs to a prima facie case under § 510 of ERISA. A plaintiff must show: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the [plaintiff] may become entitled." *Gavalik*, 812

F.2d at 852 (citing 29 U.S.C. § 1140 (1982)); *Sparacino v. AAA Mid–Atlantic, Inc.*, 1996 WL 560364, *9 (E.D.Pa. Sept.30, 1996).

 With regard to Count II of the Complaint, plaintiff alleges that he was stripped of his employment benefits when he was downgraded to casual status in November of 2004. However, plaintiff does not provide any evidence that defendant changed plaintiff's employment status in order to deprive plaintiff of his employment benefits. To the contrary, it is undisputed that plaintiff himself requested that defendant employ him as a casual worker. Because plaintiff has not established any invidious intent on the part of defendant, the Court concludes that plaintiff has not established a prima facie case under § 510 of ERISA. Thus, summary judgment is granted with respect to plaintiff's § 510 claim.

## VII. CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment is granted in part and denied in part.

An appropriate Order follows.

### *ORDER*

**AND NOW** this 19th day of December, 2006, upon consideration of Defendant Federal Express Corporation's Motion for Summary Judgment (Doc. No. 13, filed August 14, 2006); Plaintiff's Answer to Defendant's Motion for Summary Judgment (Doc. No. 16, filed September 14, 2006); and the Reply to Plaintiff's Response to FedEx's Motion for Summary Judgment (Doc. No. 18, filed September 29, 2006), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Defendant Federal Express Corporation's Motion for Summary Judgment is

**GRANTED IN PART AND DENIED IN PART,** as follows:

1. Defendant's Motion for Summary Judgment is **GRANTED** with respect to plaintiff's claim of retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2).

2. Defendant's Motion for Summary Judgment is **DENIED** with respect to plaintiff's claim of interference under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1).

3. Defendant's Motion for Summary Judgment is **GRANTED** with respect to plaintiff's claim of retaliation under Section 510 of the Employee Retirement Income Security Program, 29 U.S.C. § 1140.